Gkeen, Judge,
delivered the opinion of the court:
This case involves taxes for the calendar year of 1914 assessed under the revenue act of 1918, and for which an income-tax return was filed by the plaintiff on February 19, 1915. The other facts material to the decision may be summarized as follows:
A. H. Stange, father of plaintiff, prior to March 24, 1914, was the owner of 1,780 shares of the 2,500 shares of the stock in the A. H. Stange Company, a corporation, the remainder ■of this stock being held by his sons and daughters, or daughters and sons-in-law. On March 24, 1914, A. H. Stange organized a corporation known as the Union Land Company and on May 29, 1914, another corporation known as the ICinzel Lumber Company. On the last-named date the 2,500 shares of the capital stock of the A. H. Stange Company were reapportioned between Mr. Stange and his children in such manner as to give Mr. Stange and each of his sons and daughters (or daughters and sons-in-law) one-seventh of the said 2,500 shares. Prior to the reapportionment the plaintiff owned 120 shares in said company and after it was made, 357.
On June 10, 1914, pursuant to a resolution adopted by the hoard of directors, the A. H. Stange Company transferred to the Union Land Company cash in the amount of $60,000 .and other property having a book value of $1,059,667.15, or a total of $1,119,667.15, and also in the same manner to the IKinzel Lumber Company cash and bills receivable in the total amount of $300,000 and a parcel of real estate valued ton the books at $5,000. When these assets were tranferred to the two companies the surplus account of the Stange Company was debited with the value of said assets. The Union *406 Land Company entered on its books the assets so transferred to it at a total valuation of $3,491,382.61, and the Kinzel Lumber Company in the same manner entered on its books the assets which it received in the total sum of $305,000.
The assets conveyed to the two companies were credited to the individual stockholders thereof in proportion to their respective interest in the A. H. Stange Company as shown by their stockholdings. In this manner the plaintiff was' credited with $45,000 on the books of the Kinzel Lumber-Company on June 2, 1914, and $497,000 on the books of the-Union Land Company on June 13, 1914. At the last-named date the plaintiff withdrew from the Union Land Company $5,000 in cash which was charged to his account and the compapy issued to him capital stock of a par value of $35,000 which was also charged to his account. On June 16, he withdrew the further cash sum of $2,000 and on July 23,1914, the company issued to him debenture notes in the sum of $455,000, both of which items were debited to his account. The total of all these debits balanced and extinguished the original credit of $497,000 in the plaintiff’s account. In the same manner plaintiff’s credit account with the Kinzel Lumber Company was balanced by issuing to him stock of the par value of $15,000, cash $10,000, and debenture notes $20,000.
On November 14,1922, the plaintiff executed and filed with the Bureau of Internal Revenue a written waiver of statutory limitations approved and accepted by the commissioner as set forth in Finding Kl. The Commissioner of Internal Revenue determined that the total value of all assets transferred by the Stange Company to the Union Land Company and the Kinzel Lumber Company to be $4,494,968.81 and allocated one-seventh of this value ($642,138.40) as taxable, income to the plaintiff for the year 1914, and thereon in. February, 1924, made an additional assessment of income-taxes for 1914, which together with interest amounted to $30,779.76, which the plaintiff paid under protest on March 19, 1925. Thereafter on March 30, 1926, and on June 8,, 1927, the plaintiff submitted to the' Commissioner of InternaL Revenue a claim for refund and a supplement thereto. These *407 claims for refund give rise to the following objections which the plaintiff makes to the validity of the tax assessed:
(1st) That the transaction involved constituted the distribution of the assets of the A. H. Stange Company and was not a taxable dividend.
(2d) That the waiver of the statute of limitations was confined merely to the assessment of the tax and did not waive the bar of the statute as to the collection thereof,, and was executed after the expiration of the period of limitations.
(3d) That in any event plaintiff’s taxable income as a result of the transactions involved could have been no greater than the amount credited to him on the books of the transferee companies, being a total of $542,000 instead of the amount of $642,138.40.
(4th) That the several acts of A. H. Stange and the corporations controlled by him herein involved were merely steps taken at the direction of the said A. H. Stange to effectuate a gift to his son, the plaintiff herein, and for that, purpose constituted one transaction, and that the property received by plaintiff was a nontaxable gift from father to son to the extent of 237/357 thereof.
We will first consider the claim of the plaintiff that the stock, cash, and debentures received by him, as above, set forth, constituted a distribution in partial liquidation of the-assets of the A. H. Stange Company.
It seems to be conceded in argument by both parties that, the various acts by which certain property of the A. H. Stange Company was transformed into cash, debenture notes,, and stock in the Union Land Company and the Kinzel Lumber Company constituted in reality one transaction and the findings of fact so state. Plaintiff contends that this was a distribution-in partial liquidation of the assets of the Stange-Company. The 1928 revenue act defines “ amounts distributed in partial liquidation ” as,
“A distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.”
*408 A regulation to this effect had been in force for sometime prior to the passage of the last-named act and the part of the act which we have quoted, as we think, was merely the •adoption in the statute of a principle of accounting already well settled. At all events we think the instant case is controlled in this respect by the case of Rockefeller v. United States, 257 U. S. 176, an exactly parallel case with the one at bar. In the’ Rockefeller case a corporation engaged in producing, buying, and selling crude petroleum and transporting it through its pipe lines formed a new corporation to which the pipe-line property was conveyed. In consideration for this conveyance and as a part of the transaction, the new corporation issued all of its capital stock to the stockholders of the old corporation pro rata. The old company remained in business and retained suíñcent assets to cover its capital obligations, and the transfer of assets to the new corporation did not result in a reduction of its outstanding stock. The slight difference in the nature of the facts between that case and the one at bar is immaterial to the legal questions involved. It appeared in the Rockefeller case, supra, that the stock of the new corporation was a consideration for the conveyance. In the instant case the record is silent on the subject of consideration except as may be inferred from the facts. The whole transaction was a family matter carried out in pursuance of a plan of A. H. Stange, the father, as a result of which certain property of the A. H. Stange Company passed to the two other corporations and the plaintiff received in lieu of the interest which he possessed therein as a stockholder of the A. H. Stange Company, cash, debenture notes, and stock of the new corporations. That it was a distribution of a part of the surplus of the A. H. Stange Company is quite clear. In fact this is conceded in argument by the plaintiff, but plaintiff says that the distribution was not in the way of a dividend but in partial liquidation. The fact is that there was no cancellation or redemption of any part of the stock of the A. H. Stange Company. We think this was necessary to sustain the claim that there was partial liquidation and in this we .are sustained by the decision in the Rockefeller case wherein *409 a practically similar transaction was held to be a dividend-In that case the court said:
“ We deem it to be too plain for dispute that * * the new pipe line company shares were in substance and effect distributed by the oil company to its stockholders;. * * * in effect a dividend out of the accumulated surplus.”
In the case at bar, after transfers were made by the A. H. Stange Company it still had a surplus of $362,560.18.
In Lynch v. Hornby, 247 U. S. 339, it was held that the. 1913 revenue act imposed a tax upon—
“ * * * all dividends declared and paid in the ordinary-course of business by a corporation to its stockholders after-the taking effect of the act (March 1, 1913), whether from, current earnings, or from the accumulated surplus made up of past earnings or increase in value of corporate assets, notwithstanding it accrued to the corporation in whole or in part prior to March 1,1913,”
and a distinction is drawn between this case and the case of' Lynch v. Turrish, 247 U. S. 221, relied upon by plaintiff’s counsel. It follows that if we are correct in holding the distribution to be in effect a dividend, it was taxable under the 1913 act notwithstanding the distribution was of the. accumulated surplus made up of past earnings or increase in. the value of corporate assets.
We have hereinabove referred to the acts which resulted in. the distribution of certain of the surplus of the A. H. Stange. Company among the children of A. H. Stange, as one transaction. The plaintiff insists that beginning with the redistribution of the stock of the A. H. Stange Company whereby the children and the children-in-law of A. H. Stange received more stock than they had heretofore held, there was-, only one transaction. We do not consider this material. What we are here concerned with is the distribution of the-surplus of the A. H. Stange Company to its stockholders-The gift from A. H. Stange to his children was not taxable. The distribution of the surplus of the A. H. Stange Company to its stockholders was taxable whether it was only part of some inclusive transaction or not. There seems to have been, some confusion of thought on this point. What we are *410 bolding was subject to a tax, is not a gift, but the distribution of property by a corporation. A. H. Stange was merely a stockholder in the A. H. Stange Company. He could not give away any of the property of this company or distribute it in any manner. That had to be done by an act of the ■corporation itself, and the fact that A. H. Stange practically controlled the corporation’s acts does not alter the legal effect.
It is also contended by plaintiff that the only amount that is taxable is the credit which was given the plaintiff on the books of the new companies, but what the plaintiff got in the distribution was stock, cash, and debenture notes. So far as the value of the property of the A. H. Stange Company which was distributed is concerned, there is no question but that the commissioner put a moderate valuation thereon. All of this property so distributed went to the new companies and plaintiff and the other heirs held the same proportionate interest therein through stock that they held in the A. H. Stange Company. It is quite evident that it was intended by the several transactions to so distribute the property that each of the heirs would receive his proportionate value of the property received by the new companies. Whether we place the calculation of the dividend upon the value of the property conveyed to the new companies or whether we place it upon the value of the stock, ■cash, and debenture notes received, the result is the same ior there is no proof that the combined value of what was received by the plaintiff in the end was not equal to the value of his interest in the property conveyed. Indeed the nature of the transaction indicates that it was.
The plaintiff’s argument that the collection of the tax was barred by the statute of limitations is based on the ■claim that the waiver signed by plaintiff and the Commissioner of Internal Revenue was invalid because made after the expiration of the statutory period; and because by the terms thereof it was confined to the assessment of the tax, whereas the statute required the commissioner and taxpayer to “ consent in writing to a’ later determination, assessment, and collection of the tax.” The latter objection will be first considered.
*411 The ordinary meaning of the word “ assess,” when used in connection with matters of taxation, is to fix the amount to be paid by the taxpayer. An assessment can only be made if the taxpayer is liable for the tax, and if liable for the payment of the tax it follows that it was collectible. In other words, a prerequisite of the right to assess is the right to collect the tax when assessed. It would seem, therefore, that an agreement for an assessment was based upon the understanding that the tax was collectible if assessed. However this may be, we think that a waiver of the statute of limitations is a contract, and that even if the statute has run, the moral obligation to pay a tax properly imposed is sufficient to constitute a consideration. The waiver in the case at bar, which is set out in Finding XI, set out a special consideration under which the commissioner agreed to exercise “ deliberate, intensive, and thorough consideration ” of the liability of plaintiff for the taxes which were to be assessed. Possibly this was the ■commissioner’s duty in any event, and it might also be said that the statutes give him no authority to make a special agreement of this kind; but there was, as we have already seen, a consideration for the waiver and an understanding, .as there always is when waivers are executed, that further time will be taken for the consideration of the taxpayer’s claims. In construing the waiver, the rules with reference to the construction of contracts should be applied. If the waiver did not authorize the collection of the tax, its execution ’ was an idle performance — it was nothing but a useless scrap of paper. Whether plaintiff so- intended or not, he and his attorneys must have known that the commissioner accepted the waiver believing that it authorized ■the collection of any tax properly assessed. In such case, fhe rule with reference to contracts is—
“ The language of a contract in case of ambiguity should be interpreted in the sense that the promisor knew or had reason to know that the promisee understood it.” (13 C. J, .sec. 484 c., page 523, and cases cited, page 526.)
It should be said; also that the wordsi “ assess ” 'and assessment,” when used with reference to taxes, often in- *412 elude the collection thereof as a necessary sequence. In fact the term “ assess ” is used at times to include all the steps involved in imposing a tax on property (Allen v. McKay, 120 Cal. 332), and “ to assess ” often means to levy a tax (see cases cited under note 76, 5 C. J. 813), the two-' words being used with practically the same meaning, Idem? 76 (b), and the words “ to levy ” always include the collection of a tax. The same rule applies to the word “ assessment,” and the parties evidently intended that the word “ assessment ” should also cover the collection of the tax.
For the reasons stated above we think that the waiver removed the bar of the statute of limitations not only as to assessment but as to collection of the tax.
It is further insisted that the statute providing for waivers had no application to waivers executed after the running of the statute of limitations, and the case of Joy Floral Co. v. Commissioner, 29 Fed. (2d) 865, overruling 7 B. T. A. 800, is cited as so holding. In the case at bar the tax was assessed under section 250 (d) of the revenue act of 1921, which provided that as to taxes due for any prior year, they “ shall be determined and assessed within five years, after the return was filed, unless both the commissioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax.” The Joy Floral Co. ease, supra, discusses similar provisions contained in. section 278 of the revenue act of 1924, under which the assessment was made in that case, and section 276 of the-revenue act of 1928. In the two last-named sections the-words “ have consented ” are used instead of the word “ consent ” in section 250 (d) of the act of 1921. We do not think the difference is material for reasons hereinafter given, but the Joy Floral Co. case holds that the commissioner had no authority to enter into an agreement with the' taxpayer for a waiver of the statute of limitations after the expiration of its limitation. The argument made in support of this decision is that the commissioner’s signature,, after the statute of limitations had run, was unimportant. This statement loses its force when it is considered that it' is just as important at that period as it would have been* before the limitation had run. In the absence of a statu *413 tory provision either before or after the running of the statute of limitations the taxpayer could, by a mere oral statement, waive the running of the statute. Even after the running of the statute, the moral obligation to pay any taxes that were properly levied would be a sufficient consideration for the waiver. The reason for having the commissioner sign the waiver had, in our opinion, nothing to do with its validity. The purpose of the statutory provision was to do away with the uncertainties of oral agreements. An oral statement on the part' of the taxpayer would be subject to dispute "fynd controversy as to its form and meaning, but Congress made it clear and definite that the taxpayer should not be bound unless written evidence of such waiver could be produced. On the part of the Government, it was always understood, if not by implication agreed, that the execution of these waivers would stay proceedings for the collection of the tax until the Government could properly consider the claims of the taxpayer. Congress did not intend that the Government should be bound in any way by the acceptance of waivers made by numerous collectors and revenue agents scattered all over the country but only in case the agreement was signed by the Commissioner of Internal Eevenue. It was necessary for the orderly conduct of the Government’s business that the commissioner should have full knowledge of the action taken. In this we find abundant reason for the requirement of the signature of the officer and, as we think, the only reason why it was required. To hold that the statute requires the commissioner to consent to the waiver before the expiration of the period of limitation is to engraft upon the statute something which certainly is not contained within its provisions nor, as we think, is there any reason to infer that such was the intent of Congress.
In the same case of the Joy Floral Co., supra, much stress was laid upon the fact that in the revenue acts of 1924 and 1928 the statute provided in effect that the waiver would only be effectual where both the commissioner and the taxpayer “ have consented ” thereto in writing, and it is said the provisions just mentioned should be considered as interpretive of the language used in the 1921 act. It appears *414 to have been thought that the use of the word “ have ” before the word “ consented ” implied that this action must have been taken before the expiration of the period of limitation. If Congress had intended that the waiver must be executed before the period of limitations had expired, we think it would have said so. But it did not and we see no justification for this construction which we think is neither grammatical nor logical. Whether the word “ consent ” is used alone, as it was in the 1921 act, or the words “ have consented ’’ are used, .as in the 1924 and 1928 acts, is immaterial. If a prior “ consent ” is required, then the parties must “ have consented.” The latter expressions are merely a paraphrase. In any event the parties must “ have consented ” to the waiver prior to the time of the collection of the tax and the words in the later statutes merely express the natural sequence of the two events. This is true even though the 1921 act be construed literally and strictly. In our opinion the decision of the Board of Tax Appeals is supported by the better reasoning, and the objections of the plaintiff to the validity of the waiver must be overruled.
From what we have stated above, it follows that the plaintiff’s petition must be dismissed and it is so ordered.
Booth, Chief Justice, concurs.
Graham, Judge, concurs in the findings and the result.