## R. H. STEARNS CO. v. UNITED STATES.
### No. L–187.

Court of Claims.
March 13, 1933.

774

Howe P. Cochran, of Washington, D. C. (William N. Wood and Frederick S. Winston, both of Washington, D. C., on the brief), for plaintiff.

Charles B. Rugg, Asst. Atty. Gen. (Charles R. Pollard and Joseph H. Sheppard, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WHALEY, Judge.

The plaintiff brings this suit to recover an overpayment of $14,928.07 found by the Commissioner due the plaintiff for the taxable year 1918 and applied to a deficiency for the year 1917. At the time of the application the plaintiff had filed a waiver signed by it, but the signature of the Commissioner was not placed thereon until several years after the tax liability for the years in question had been finally adjusted.

For the fiscal years 1917 and 1918 plaintiff filed its income and income and profits tax returns, and paid the taxes therein disclosed. The five-year period provided for in section 250 (d) of the Revenue Act of 1921 (42 Stat. 264), in which collection could be made for any additional assessment on the 1917 return, expired April 10, 1923, "unless both the Commissioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax."

In February, 1921, the plaintiff executed an unlimited waiver, and the Commissioner signed this waiver on February 6, 1923. This waiver expired on April 1, 1924, under the provisions of the Commissioner's mimeograph letter 3085 (Cumulative Bulletin II–1, p. 174).

The five-year limit on the 1918 return for additional assessment expired June 19, 1924. The plaintiff therefore, on February 19, 1923, executed another waiver covering both the year 1917 and the year 1918, and, instead of being unlimited in time, expired by its terms on March 1, 1925. On June 26, 1923, the Commissioner of Internal Revenue made an additional assessment against the plaintiff for the fiscal year ended July 31, 1917, in the sum of $22,189.10. Following this assessment, the plaintiff filed on August 9, 1923, a claim for refund and credit for the four fiscal years, commencing August 1, 1917, and ending July 31, 1921.

After an audit of the various years covered by the claim for refund and credit, the Commissioner on March 1, 1924, one month before the first waiver had expired, and within the period of the second waiver, approved a schedule of overassessments, including an overassessment in favor of plaintiff for $14,928.07, and transmitted it to the appropriate collector for action in accordance with the directions appearing thereon. On June 12, 1924, the collector returned the said schedule with his certification of the application of the credit in accordance with instructions and also forwarded to the Commissioner at the same time a schedule of refunds and credits on which the said overpayment in favor of plaintiff was shown as having been credited. The Commissioner signed the schedule of refunds and credits June 28, 1924, and transmitted a certificate of overassessment to plaintiff. The said overpayment was thus applied as a credit against the remaining unpaid tax liability for the fiscal year ending July 31, 1917, reducing the outstanding liability for that year to $5,829.07 which was paid September 15, 1924, after a second notice and demand on September 1, 1924. The Commissioner's signature was not placed on the waiver of February 19, 1923, until April 7, 1930.

On May 16, 1930, the plaintiff filed two claims for refund, each in the amount of $14,928.07 for the fiscal years ended July 31, 1917, and July 31, 1918, respectively.

The sole contention of the plaintiff is that the signature of the Commissioner, having been placed on the waiver many years after

the period for assessment and collection, was ineffective for the validation of such collection. The purpose of a waiver is to extend the time fixed by statute in which an assessment and collection could be made by the Commissioner, and the desire of the taxpayer in executing it is to have his returns carefully and deliberately examined and audited for the years in question so he can receive the benefit of any errors, overassessments, and corrections of alleged underpayment. The statute does not require or demand that the actual waiver executed by plaintiff be signed by the Commissioner. It only provides both Commissioner and taxpayer consent in writing to a later determination, assessment, and collection.

When the additional assessment was made June 26, 1923, the statute had not run even under the first waiver, which did not expire until April 1, 1924, and collection could, and undoubtedly would, have been then made had it not been for the action of plaintiff in filing a claim for refund and credit in August, 1923, at or about the time demand was being made for the payment of the tax. As a result of the filing of the claim, a consideration of which necessitated an examination of plaintiff's returns for four years beginning in 1917 and ending in 1921, and thus might well have required, and did require, more time than remained until the first waiver expired, it is certainly reasonable to say that in such consideration the commissioner relied upon the second waiver which was then on file.

It is thus evident that plaintiff benefited, at its own request, by the actions of the commissioner under the second waiver. Collection of $20,757.14 was withheld from August, 1923, until September, 1924, when, as a result of the application of the credit, plaintiff had to pay only $5,829.07. The first waiver included only the year 1917 and the second waiver included both 1917 and 1918; clearly the Commissioner acted under the greater, which included the lesser in the number of taxable years and in time extension. The plaintiff derived an advantage by the execution of the waiver. In the case of Liberty Baking Company v. Heiner (C. C. A.) 37 F.(2d) 703, 704, the court said: "* * * It would be unconscionable to allow the taxpayer to afterwards repudiate a consent upon which the Commissioner has acted and relied. It appears that, in the circumstances, the execution of the waivers, was a necessary incident to the securing of further consideration of the plaintiff's tax liability."

The plaintiff in this case accepted the benefits of the Commissioner's acts under the waiver, and for almost seven years did nothing to indicate the lack of the signature of the Commissioner on the waiver before its expiration in any way affected its binding effect. It was not until the signature of the Commissioner was placed on the waiver more than six years after the collection had been made that the plaintiff filed a refund claim for the amount of the overassessment for the fiscal year 1918, and within four days thereafter suit was commenced in this court. The statutory period of six months in which the Commissioner has to pass on a refund claim before suit can be commenced was ignored. The suit is based on an account stated. Bonwit Teller & Co. v. United States, 283 U. S. 258, 51 S. Ct. 395, 75 L. Ed. 1018.

If the waiver given on February 19, 1923, is valid and binding, all the acts of the Commissioner are timely and proper. In our opinion the contention of the plaintiff is without merit and most technical in nature and effect. There is nothing in the statute which requires the Commissioner to give his consent in any particular time or period to the waiver. It is not disputed that he did sign the waiver. The contention is his signature was not placed thereon until the extension period named in the waiver had expired. But, when settlement was made and for many years afterwards while the waiver was without the actual signature of the Commissioner, the plaintiff did not complain; on the contrary, it accepted the benefits under the waiver, and no action was taken until the signature was attached years afterwards.

In Eclipse Lawn Mower Co. v. United States, 1 F. Supp. 768, decided by this court November 14, 1932, the proof was that a waiver had been filed in response to a written request by the Commissioner and had been misplaced and could not be produced in evidence. The assessment list, as in the instant case, was indorsed "waiver." The court held that the signing of the assessment list by the Commissioner with the indorsement "waiver" on it was sufficient under the statute. In the present case the assessment list contained the word "waiver." It is contended that only the first waiver was meant by the use of this word. But we can see no reason for such an implication and restriction of its use. Both waivers were on file at the time, and the second waiver included both years under controversy, and, in our opinion, the intendment by the use of the word applied to the second and not to the first waiver which only covered the one year.

In Sabin v. United States, 44 F.(2d) 70, 76, 70 Ct. Cl. 574, this court held valid a

waiver which the taxpayer had attempted, by written instrument, to revoke prior to the indorsement thereon of the Commissioner's approval. The court said:

"The statute does not require that a consent, in order to be valid, must be in one instrument or that it shall be in any particular form. All that is required is that the consent be evidenced in writing. * * *

"The statute requires no more than that there shall be written evidence of the fact that both parties understand that the limitation period specified in the statute is not to govern the matter, and, therefore, that when a date to which the period has been extended is specified there shall be a complete understanding about it. No date was specified in the waiver in this case but the writings leave no doubt as to the understanding of the parties that the period specified in the statute was not to control."

In the instant case both parties had a clear understanding that the statutory period had been extended and both acted upon that understanding. For years the plaintiff was satisfied and contented with the understanding. But by some mysterious channel, after six years, the plaintiff learns the Commissioner has placed his signature to the waiver, and then for the first time he complains about what was the understanding. No complaint was made while his signature was lacking.

A taxpayer can execute a voluntary waiver after the statutory limitation has expired. Stange v. United States, 68 Ct. Cl. 395; Id., 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335.

In the case of Trustees for Ohio & Big Sandy Coal Co. v. Commissioner (C. C. A.) 43 F. (2d) 782, 784, the court, in commenting on a waiver given after the bar had allegedly fallen, said: "As to the signing of the written waivers by the Commissioner, all that is required by the statute is that the Commissioner and taxpayer consent in writing to the extension. * * * But, apart from this, the taxpayer, by the execution of the waiver, has obtained delay in the assessment of additional taxes and a more deliberate and thorough consideration of the questions involved.

Under such circumstances the taxpayer ought not be heard to urge the bar of the statute, which it expressly agreed to waive."

In Commissioner v. Hind, 52 F. (2d) 1075 (Circuit Court of Appeals for the 9th Circuit), the court held that a waiver being a unilateral agreement did not require the signature of the Commissioner to give it effect. It is unnecessary for us to follow this decision to the extent it goes, because in the case before us the Commissioner did sign the waiver, although many years had elapsed after its expiration. The signature of the Commissioner having been given to the waiver together with the other circumstances of the case, we believe, and so hold, that the acts of the Commissioner were valid and proper under a consent in writing by both parties.

The facts in the case of Mosier v. Goodcell (D. C.) 49 F. (2d) 391, 392, are very similar to the facts in this case, and in the Mosier Case the court held: "It would seem by the decisions that the written approval by the Internal Revenue Commissioner is not deemed indispensable to the validity of a waiver. As was said in Stange v. United States, hereinabove cited: 'A waiver is not a contract, and the provision requiring the Commissioner's signature was inserted for purely administrative purposes and not to convert into a contract what is essentially a voluntary, unilateral waiver of a defense by a taxpayer.' Also in Aiken v. Burnet [282 U. S. 277, 51 S. Ct. 148, 75 L. Ed. 339], above cited: 'The requirement in section 250 (d) of that act that the Commissioner sign the consent was inserted to meet exigencies of administration, and not as a grant of authority to contract for waivers.' It should be held, in my opinion, that where a taxpayer deposits with the Internal Revenue Commissioner a written waiver in due form and that waiver is accepted and acted upon, the date when the commissioner actually indorses thereon his written approval does not change the date when the waiver becomes effective."

In our opinion the petition should be dismissed. It is so ordered.

BOOTH, Chief Justice, took no part in the decision of this case on account of illness.