## AIKEN, ADMINISTRATRIX, *v.* BURNET, COMMISSIONER OF INTERNAL REVENUE.

No. 69. Argued December 3, 1930.—Decided January 5, 1931.

*Mr. W. Leo Austin*, with whom *Messrs. James H. Maxey* and *L. E. Cahill* were on the brief, for petitioner.

*Assistant Attorney General Rugg*, with whom *Solicitor General Thacher* and *Messrs. Claude R. Branch*, Special Assistant to the Attorney General, *Joseph H. Sheppard* and *Bradley B. Gilman* were on the brief, for respondent.

Mr. Justice Brandeis delivered the opinion of the Court.

On March 30, 1918, Aiken filed his return of income and excess profits taxes for the year 1917. On March 12, 1925,

the Commissioner made a jeopardy assessment which, upon a claim for abatement, he reduced, on October 7, 1926. Aiken thereupon appealed to the Board of Tax Appeals on the grounds that the jeopardy assessment had been erroneously computed, and that both assessment and collection were barred by the statute of limitations. The Commissioner's determination was affirmed by the Board, 10 B. T. A. 553; and its decision was affirmed by the Circuit Court of Appeals for the Eighth Circuit, 35 F. (2d) 620. This Court granted a petition for certiorari, the argument to be "limited to the questions concerning the validity and effect of the waivers," 281 U. S. 713.

The Revenue Act of November 23, 1921, c. 136, § 250 (d), 42 Stat. 227, 265, provides a five-year period of limitation for the assessment and collection of income and excess profits taxes under earlier revenue acts. The five years from the filing of the return expired March 30, 1923. In order to sustain the validity of the assessment and the right of collection, it was necessary to establish a waiver effective March 12, 1925, the date of the jeopardy assessment. Several waivers had been given. The first, which was executed by the taxpayer on February 5, 1921, and filed with the Bureau two days later, was not executed by the Commissioner until after the enactment of the 1921 Revenue Act. That waiver expired April 1, 1924.[1] Before that date, a second waiver had been duly executed, which, by its terms, was to remain in effect for "one year after the expiration of . . . the statutory period of limitation as extended by any waivers already on file with the Bureau, within which assessments of taxes may be made. . . ." Thus the jeopardy assessment was made shortly before April 1, 1925, the expiration period of the first waiver as extended by the second; and in order that this tax may be collected, both waivers must be valid.

[1] It was unlimited in time, but expired under a departmental ruling, promulgated April 11, 1923, by which all such waivers were to terminate April 1, 1924. Mim. 3085, I. R. Cum. Bull. II-1, p. 174.

*First.* It is contended that the waiver of February 5, 1921, is invalid because it was executed prior to the enactment of §.250 (d) of the Revenue Act of 1921 which was the first of the revenue acts to provide in terms for the giving of waivers. The argument is that prior to the enactment of that section the Commissioner lacked authority to accept waivers of the limitation on the period within which assessment might be made under the Acts of 1916 and 1917.[2] This contention is not sound. The limitation periods on assessment could be waived by the taxpayer in the same fashion as other statutes of limitations are waived. No reason appears why the Commissioner could not accept such a waiver prior to the Act of 1921. Although the Government might at that time still have brought suit even though the period for assessment had expired, it was thought desirable to follow the normal and simpler course of assessment and collection by distraint proceedings because of the advantages afforded.[3] The Commissioner requested the taxpayer to execute a

[2] Section 9 (a) of the Act of September 8, 1916, c. 463, 39 Stat. 756, 763, provided that where a false [erroneous] return had been filed, the Commissioner had three years in which to discover the error and to make an additional assessment. Section 3 of the Act of October 3, 1917, c. 63, 40 Stat. 300, 301, incorporated these provisions by reference. Compare, as to the 1909 and 1913 Acts, *Eliot National Bank* v. *Gill,* 218 Fed. 600; *National Bank of Commerce* v. *Allen,* 223 Fed. 472; *Woods* v. *Lewellyn,* 252 Fed. 106; and see Reg. 33 (1914) Arts. 25, 177; *id.* (Rev. ed. 1918) Arts. 38, 233; *W. P. Brown & Sons Lumber Co.* v. *Burnet,* decided this day, *post,* p. 286, note. 2.

[3] Compare Article 233 of Regulations 33 (Rev. ed. 1918) which stated in this connection: "While the Government is fully authorized to recover such taxes by suit, it is desirable, in order to obviate needless expense and annoyance to the taxpayer and the Government, that the collection be made as a result of a formal assessment." See also *id.,* Art. 38.

waiver in cases where prolonged reëxamination of the return seemed necessary. If authority was needed for the acceptance of such waivers, it may be found in the general broad administrative provisions of the respective acts.[4] Even after the Act of 1921, a so-called waiver was not a contract. The requirement in § 250 (d) of that Act that the Commissioner sign the consent was inserted to meet exigencies of administration, and not as a grant of authority to contract for waivers. See *Stange* v. *United States,* decided this day, *ante,* p. 270; *Florsheim Bros.* v. *United States,* 280 U. S. 453, 466.

*Second.* It is contended that the first waiver should not be construed as waiving a limitation prescribed by a statute thereafter enacted. The argument is that § 250 (d) of the Act of 1921 superseded this waiver and required a new consent executed subsequent to its enactment and in accordance with its terms. While § 250 (d) first specified that a waiver be in writing and signed by the Commissioner, there was nothing in that section which invalidated waivers made prior to its enactment or limited the effect of such instruments on the limitations therein imposed. Compare *Florsheim Bros.* v. *United States,* 280 U. S. 453, 467. The first waiver; by its express terms, embraced "any and all statutory limitations" upon the assessment of these 1917 taxes. We see no reason for

---

[4] Revenue Act of October 3, 1917, c. 63, 40 Stat. 300, 325, § 1001, provides: "That . . . every person . . . liable to any tax imposed by this Act, or for the collection thereof . . . shall comply with such regulations as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may from time to time prescribe." This was followed by § 1309 of the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1143, which authorized "all needful rules and regulations for the enforcement of the provisions of this Act." Compare Revenue Act of March 3, 1917, c. 159, 39 Stat. 1000, 1002, § 207.

restricting this language so as to exclude the limitations subsequently imposed by § 250 (d) of the Act of 1921.

*Third.* It is contended that the first waiver, even if valid, did not operate to extend the period for the assessment of war-profits as distinguished from income taxes. The argument is based on the reference in the waiver, which was prepared by the Commissioner, to " all Federal taxes imposed by the Act of Congress, approved September 8, 1916, as amended by the Act of Congress, approved October 3, 1917," and it is contended that the war-profits tax was a separate enactment, not an amendment to the 1916 Act, and hence not included within the waiver. It is clear that this waiver was intended to embrace all liability under the 1917 return then pending. Moreover, the only statute approved October 3, 1917, was the Revenue Act of that year, Chapter 63, the general object of which was to increase for war purposes the taxes levied by the Act of 1916.

*Fourth.* The petitioner has argued also that the first waiver did not purport to extend the time for collection. This waiver is identical with that before us in *Stange* v. *United States;* decided this day, *ante,* p. 270, which we held was intended to embrace all the steps necessary for the ultimate collection of the tax. The second waiver expressly included " determination, assessment, and collection." Consequently, as the assessment of March 12, 1925, was timely, the right of collection is within § 278 (d) and § 280 of the Revenue Act of 1924, c. 234, Tit. II., 43 Stat. 253, 300, 301, which gives six years from the making of the assessment. *Florsheim Bros.* v. *United States,* 280 U. S. 453, 467. Compare *Russell* v. *United States,* 278 U. S. 181.

*Affirmed.*