**CONSUMERS' ICE CO. v. BURNET, Commissioner of Internal Revenue.**

**No. 4940.**

Court of Appeals of District of Columbia.

Argued April 8, 1931.

Decided May 4, 1931.

Jacob S. Seidman, of New York City, for appellant.

Sewall Key, C. M. Charest, Shelby S. Faulkner, J. Louis Monarch, all of Washington, D. C., Morton Poe Fisher, of Baltimore, Md., and Morton K. Rothschild, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a decision of the Board of Tax Appeals involving income and profit taxes for the fiscal years ending November 30, 1920, and November 30, 1921. 11 B. T. A. 144.

The Consumers' Ice Company (a Michigan corporation) was organized in April, 1894, and issued capital stock for the assets of five companies then engaged in the ice business in Grand Rapids, Mich. The Board found that in 1894 appellant "acquired certain riparian rights by issuing therefor $34,-200 par value of its stock. Such riparian rights were on Reid's Lake and Fisk's Lake, three and one-half miles from Grand Rapids, Michigan. In 1894 these lakes were the only points to which there were hard roads by which ice could readily be transported to that city. The total frontage around Reid's Lake was between four and five miles and around Fisk's Lake about a mile and a half. In 1894 much of the frontage was swampy and much too high for harvesting ice. The commercially advantageous parts of the frontage were owned by six companies engaged in competition in the ice business in Grand Rapids. Five of the companies consolidated to form the petitioner (appellant) in 1894, appraisals were made of the property of

each, and capital stock in the par value of $34,200 was issued for the riparian rights acquired."

During the same year, the company acquired riparian rights from J. Paul for $2,000 and from D. C. Underwood for $2,500. The lands of Underwood and Paul were from 20 to 40 feet above the lake, and were of small value, while "all of the lands appurtenant to the riparian rights that had been acquired by the Consumers Ice Company at organization were on a level with the lake." The reason for acquiring the riparian rights from Underwood and Paul was to obviate the possible charge of trespass for cutting ice on the lake "which other parties might think belonged to them." In other words, the purchases from Underwood and Paul were purely defensive in character.

The Board ruled that there was no evidence "as to the value of the riparian rights as of the time the petitioner (appellant) acquired them nor of the value of the stock issued therefor." While the Board apparently recognized that these riparian rights possessed very substantial value, and that without them the company could not have done business at all, nevertheless it refused to place any value whatever upon them, thus eliminating from invested capital the value of these acquired rights. In our view the Board erred.

During the same year, the Underwood and Paul rights were secured for a cash payment of $4,500. This amount the Board has allowed. The evidence is convincing that riparian rights (on the level of the lakes) acquired on the organization of the company were of far greater value than those acquired from Underwood and Paul, and yet the Board made allowance in full for the latter and allowed nothing for the former. The good faith of appellant is not questioned. The Board was satisfied that capital stock in the par value of $34,200 was issued for the riparian rights acquired. It was also satisfied that $4,500 cash was paid for rights of far less value. In our view, there was sufficient evidence to justify and require the Board to place a value of at least $4,500 upon the riparian rights acquired for which stock was issued.

It is assigned as error that a witness for appellant was not permitted to testify as to the value of the property "conveyed to the Consumers Ice Company by the South Grand Rapids Ice Company in 1894." The ground of the objection was that the witness "has not been qualified and is incompetent to ex-

press an opinion with respect to the value." There was no evidence that the witness was qualified to testify on the question of value (Raub v. Carpenter, 17 App. D. C. 505, 513), and hence the ruling was correct.

Appellant further contends that the assessment and collection of deficiencies for the fiscal years 1920 and 1921 were barred by the statute of limitations. The deficiency letter was mailed on February 11, 1926. Two waivers, dated January 4, 1926, for the "year 1920" and the "year 1921," were signed by D. H. Blair (Commissioner), with the letter "C" underneath, and by appellant. The Board found as a fact that they were executed on or about the date they bore. This was sufficient, for whether they were executed upon that date or later is of no significance. Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335; Aiken v. Burnet, 282 U. S. 277, 51 S. Ct. 148, 75 L. Ed. 339; Brown & Sons Co. v. Burnet, 282 U. S. 283, 51 S. Ct. 140, 75 L. Ed. 343.

Because of the failure of the Board to place any value upon the riparian rights, the decision must be reversed, and, as the value which we find as amply proved is not the full amount to which appellant is justly entitled to be allowed, we think that in fairness the case should be remanded, with instructions to allow appellant, if it shall be so advised, to supplement its proof in the respects mentioned, so that the value of the stock issued, or independently the value of the riparian rights, may be accurately shown.

Reversed.