518

COMMISSIONER OF INTERNAL REVE-
NUE v. OSWEGO & SYRACUSE
R. CO.
No. 199.

Circuit Court of Appeals, Second Circuit.
Jan. 9, 1933.

G. A. Youngquist, Asst. Atty. Gen., Helen R. Carloss, Sewall Key and J. P. Jackson, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., for petitioner.

Douglas Swift, of New York City, for respondent.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

Income and profits taxes for the calendar year 1921 are involved. The facts are fully disclosed by the following quotation from the opinion of the Board of Tax Appeals:

"The parties, by their respective counsel, have stipulated that on June 14, 1922, The Delaware, Lackawanna and Western Railroad Company filed with the Collector of Internal Revenue for the Second District of New York, a consolidated income and excess profits tax return for the taxable year 1921, for and on behalf of itself and its affiliated companies, including The Oswego and Syracuse Railroad Company, petitioner herein. Thereafter, the Commissioner of Internal Revenue ruled that The Oswego and Syracuse Railroad Company was not affiliated with The Delaware, Lackawanna and Western Railroad Company; and on February 18, 1928, served on The Oswego and Syracuse Company a sixty day notice of a deficiency of $15,333.26, representing income and excess profits taxes, against The Oswego and Syracuse Railroad Company separately for the year 1921. There was no assessment of any income or excess profits tax against The Oswego and Syracuse Railroad Company for the taxable year 1921 prior to the notice of deficiency of $15,333.26, dated February 18, 1928.

"On June 14, 1922, The Oswego and Syracuse Railroad Company filed with the Collector of Internal Revenue for the Second District of New York, an information return, form 1122, for the year 1921. No return other than the consolidated return referred to above and form 1122 was ever filed for the year 1921 by The Oswego and Syracuse Railroad Company.

"On November 9, 1926, The Oswego and Syracuse Railroad Company executed a waiver of assessment for 1921, expiring on December 31, 1927. On September 12, 1927, The Oswego and Syracuse Railroad Company executed a second waiver of assessment for 1921, expiring on December 31, 1928.

"No point is made that the consolidated return of The Delaware, Lackawanna and Western Railroad Company, as filed, did not disclose sufficient facts in respect of The Oswego and Syracuse Railroad Company so that the information therein contained would form a basis upon which the tax liability of the petitioner could be computed by the respondent."

As the return was filed more than four years before any assessment, the limitation of the statute (section 277 (a) of the Revenue Act of 1926, 26 USCA § 1057 (a) and note) was applicable, unless the first waiver, filed more than four months after the four-year period had expired, was valid.

The position of the government briefly is that a waiver is not invalid simply because it is filed after the statute of limitations has run, Stange v. United States, 282 U. S. 270, 271, 51 S. Ct. 145, 75 L. Ed. 335; Burnet v.

Railway Equipment Co., 282 U. S. 295, 51 S. Ct. 137, 75 L. Ed. 349; that, even if section 1106 (a) of the 1926 act (26 USCA § 1249 note), which provided that "The bar of the statute of limitations against the United States in respect of any internal-revenue tax shall not only operate to bar the remedy but shall extinguish the liability, * * *" is to be treated as in force, it does not change the situation because it is not itself a statute of limitations, and anything which removes the bar of the limitation statute does away with the express condition precedent to the applicability of section 1106 (a); and, finally, since section 1106 (a) was repealed, as of the date of its passage, by the Revenue Act of 1928 (45 Stat. 875), it is of no force, and this appeal must be decided as it would have been had section 1106 (a) never been enacted at all.

It is obvious that section 1106 (a) never could extinguish the liability until the bar of the statute of limitations had barred the remedy. If the waiver is to be held valid and to have the effect of an uninterrupted extension of the four-year period, then there never was any bar, and so at no time was liability extinguished. On the contrary, if after four years from the filing of the return there was a period when the bar of the limitation statute was in force, subject at most to removal by a waiver, there was a time when all liability had been extinguished. Unless it is true that between June 16, 1926, when the four-year period expired, and November 9, 1926, when the first waiver was filed, there was a period when there was no liability for the tax, it seems impossible to believe other than that words have lost their meaning. It should be noticed that Stange v. United States, supra, Aiken v. Burnet, 282 U. S. 277, 51 S. Ct. 148, 75 L. Ed. 339, and Burnet v. Chicago Railway Equipment Co., supra, were all decided when the bar of the statute of limitations affected only the remedy. Whatever liability ever existed remained after the limitation on the remedy had run, but it could not be enforced unless the taxpayer waived the limitation. Strictly speaking, the limitation statute did no more after section 1106 (a) of the 1926 act was in effect. However, the bar of the remedy was then made effective to do away with all liability.

It does not follow that, because the bar of the remedy might be removed later by a waiver, it never existed at all. After the stated time has run, surely it is impossible to treat a bar created in the first instance solely by reference to time elapsed after an ascertainable date as though it had never existed at all as soon as a waiver sufficient to remove it has been filed. This waiver was given, of course, not to make the futile gesture of trying to turn time back in its course, but to waive the effect under the statute of the passage of time. One difference between the execution of a waiver before the period of limitation has run and its execution afterwards is that, in the first instance, the taxpayer waives his right, other conditions aside, to have the bar arise as soon as the time limit of the statute itself has expired; while, in the second instance, he waives his right to insist upon a bar which has already been created. It is plain enough that he may do the former, and, so far as the remedy is concerned, he may do the latter. Stange v. United States, supra. But, since the bar in the second instance was a bar until removed and his right to insist upon it as such is what he waives, the liability which it had extinguished is not brought into being simply by removing what had already destroyed that liability. Dobbins v. Commissioner (C. C. A.) 31 F.(2d) 935. Simply stated, the taxpayer waived its right, when it executed the waiver, to plead the statute of limitations as a defense to any attempt to collect these taxes, but, as there was no liability to enforce at the time it waived the statute of limitations, it gave up nothing when it waived that defense. In every real sense the waiver was invalid. Only in theory as being sufficient to remove the bar to a remedy to enforce a nonexistent liability can it be considered to have any substance. Accordingly, we have reached the conclusion that the first waiver, since it was given after the bar of the limitation statute had arisen, and liability had been extinguished, was invalid when executed and filed.

Liability for these taxes was based solely on the taxing power of the government as exercised through acts of Congress under which the administrative officers could and should collect taxes, but, when the statute itself set up a date when liability would cease and that date arrived, the taxing statute became functus officio. Thereafter the taxpayer and the Commissioner of Internal Revenue had no power to agree to anything which would create any statutory liability. Any liability set up by their agreement would of necessity be contractual. And such a waiver as we have here is not a contract. Florsheim Bros. Co. v. United States, 280 U. S. 453, 466, 50 S. Ct. 215, 74 L. Ed. 542. The signature of the Commissioner was required only for administrative purposes. Stange v. United States, supra. Nor did it

520

purport to do more than waive the limitation. When and after the first waiver was filed, the parties stood as though there never had been any liability. Compare William Danzer Co. v. Gulf & S. I. R. R., 268 U. S. 633, 45 S. Ct. 612, 69 L. Ed. 1126.

■ However, as section 1106 (a) was repealed as of the date of its passage by the Revenue Act of 1928 (45 Stat. 875) the government insists that it should be held to have, and to have had, no effect in this case. We do not find it necessary to decide broadly the effect of its repeal in 1928. The 1928 act expressly provided that " * * * the validity of waivers made prior to the enactment of this Act, * * * shall be determined according to the law in existence at the time such waiver was filed." Section 506 (c), 26 USCA § 1060 note. At the time the first waiver was filed, the law as it then stood was certainly in existence, and, if Congress had not intended to have waivers construed in accordance with it, something in the nature of a qualification was necessary, assuming arguendo that such a qualification would have been a valid exercise of legislative power, to the effect that the law in existence should be held to be the existing law as of that date only after the provisions of the 1928 act had been given effect. But, if Congress had intended any such thing, section 506 (c) would not have been put into the Revenue Act of 1928 at all. There could have been no reason for writing it in and writing out its effect at the same time; nor can we now find any sound reason for writing it in unless Congress intended that the provisions of the 1928 act should be excluded in determining the validity of waivers given before its enactment. As the first waiver was invalid, the second was also.

Affirmed.

L. HAND, Circuit Judge (dissenting).

Had section 278 (c) of the Act of 1926 (26 USCA § 1060 note) stood alone, the waiver would have been good, though made after the period for assessment had expired. Burnet v. Railway Equipment Co., 282 U. S. 295, 51 S. Ct. 137, 75 L. Ed. 349. That case concerned the Act of 1924, but section 278 (c) of that law was the same (26 USCA § 1060 note). Section 278 (e) of the Act of 1926 (26 USCA § 1062) did indeed provide that if an assessment were barred when the act took effect, no waiver should be valid if made thereafter; but section 278 (e) of the Act of 1924 (26 USCA § 1062 note) seems to me substantially the same. The

court considered it in Burnet v. Railway Equipment Co., and necessarily decided that it did not control the interpretation of section 278 (c). The taxpayer's position must therefore rest upon section 1106 (a) of the Act of 1926 (26 USCA § 1249 note) which extinguished the liability with the period of assessment; it argues, as I understand, that a waiver cannot revive a liability once extinguished. I do not see any but a formal distinction, but in any case section 612 of the Act of 1928 (45 Stat. 875) affected to repeal section 1106 (a) of 1926, retroactively; that is, Congress meant to change any rights and liabilities which had vested meanwhile, into what they would have been, had section 1106 (a) never been included in the Act of 1926. If it had that power, the waiver was valid under section 278 (c).

The taxpayer answers that section 506 of the Act of 1928 which by subdivision (a) (26 USCA § 1060) amended section 278 (c) of the Act of 1926—though not retroactively—provided in subdivision c (26 USCA § 1060 note) that all waivers should be good or bad, as they had been under the law when they were made; and since section 1106 (a) made the waiver bad when made, it remained so. But what was the law of 1926? Congress commanded that section 1106 (a) should be treated as though it had never been a part of it; and if it never had been, the premiss fails. Besides, section 506 (b) of the Act of 1928 (26 USCA § 1062a) added subdivision f to section 278 and validated any waiver made between May 29, 1928, when it took effect, and January 1, 1929. Are we to say that notwithstanding this, waivers between the enactment of the Act of 1926 and May 29, 1928, are invalid? That would be a very whimsical result. So I do not see that section 506 (c) (26 USCA § 1060 note) affects the situation at all.

That Congress had power to do all this, if it really meant to, I have no doubt. Graham & Foster v. Goodcell, 282 U. S. 409, 51 S. Ct. 186, 75 L. Ed. 415. The taxpayer had consented to an extension of the period, and is in as little position to complain that section 612 of the Act of 1928 revived his liability, as though it had merely tolled a bar to it. I cannot believe that the Constitution is concerned with such scholastic refinements. Having agreed to the extension, probably to avoid a jeopardy assessment, it has no just grievance that the formal impediments to the realization of its purpose are cleared away. It has had its consideration, and is merely being held to its promise. I think that the assessment was valid.