## NEW ENGLAND SOUTHERN MILLS v. WHITE, Collector.

### No. 5637.

District Court, D. Massachusetts.
Aug. 6, 1935.

Merrill G. Hastings, of Boston, Mass., for plaintiff.

Frank J. Wideman, Asst. Atty. Gen., Andrew D. Sharpe, of Washington, D. C., D. Louis Bergeron, Sp. Asst. to Atty. Gen., and Francis J. W. Ford, U. S. Atty., and J. Duke Smith, Asst. U. S. Atty., both of Boston, Mass., for defendant.

BREWSTER, District Judge.

This action is for the recovery of additional taxes assessed upon 1918 income. It was tried without jury. The plaintiff, a corporation, was affiliated with three other corporations. In 1916 and 1917 plaintiff and two of its affiliates filed separate returns. In 1918 and 1919 plaintiff filed consolidated returns for itself and the three affiliated corporations. The controversy is over the 1918 tax, and the vital question is whether an additional assessment of $241,683.74, or any part of it, was lawfully assessed and collected. The consolidated return was filed June 20, 1919. The additional assessment was made July 11, 1925.

The applicable statutes are found in Revenue Acts of 1924 and 1928. Of the former, sections 277 (a) and 278 (c), 26 USCA §§ 1057 note and 1060 note, are pertinent.

"Sec. 277. (a) Except as provided in section 278 [section 1058] * * *

"(2) The amount of income, excess-profits, and war-profits taxes imposed by * * * the Revenue Act of 1918 * * * shall be assessed within five years after the return was filed, and no proceeding in court for the collection of such taxes shall be begun after the expiration of such period."

"Sec. 278. * * *

"(c) Where both the Commissioner and the taxpayer have consented in writing to the assessment of the tax after the time prescribed in section 277 [section 1057 of this title] for its assessment the tax may be assessed at any time prior to the expiration of the period agreed upon."

Section 607 of the Revenue Act of 1928, 26 USCA § 2607, provides that: "Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid (whether before or after the enactment of this Act [May 29, 1928]) after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim."

Respecting the 1916 and 1917 taxes, the time for assessing had been extended by. written waiver. Additional assessments for these years were in controversy on divers grounds. On July 17, 1924, plaintiff's attention was called by the Internal Revenue Department to the fact that the time for additional assessments of 1918 taxes had expired, and plaintiff was requested to file a waiver. This, plaintiff refused to do. Subsequent to this request, plaintiff's representatives held conferences with representatives of the Department at which the tax liability for 1917, 1918, and 1919 was discussed. Preparatory to a conference called for December 4, plaintiff submitted an extended memorandum for consideration. In a letter accompanying this memorandum the plaintiff states:

"The taxpayer has given very full consideration to the question of giving such a waiver. In view of the fact that numerous previous computations by the unit of tax liability for the year 1917 have varied greatly in amount, the taxpayer has reached the conclusion that although it is reluctant to take advantage of any technicality with regard to the taxpayer's payment of any additional tax for the year 1918, nevertheless it cannot in fairness to its stockholders give any such waiver until a final computation of 1918 tax liability has been made by the Department and the results submitted to it for consideration.

"Therefore the taxpayer desires to have it distinctly understood that in preparing, executing and transmitting to the Unit this memorandum it does not (except for the purpose of discussion only) * * * consent to the assessment of any additional tax for the year 1918 or in any way waive or prejudice in any manner whatsoever any of its rights of whatever kind."

On January 21, 1925, there was another conference with representatives of the Internal Revenue Department when what purported to be the latest determination of plaintiff's tax liability for the years 1916 to 1919, inclusive, was submitted without comment or explanation. These determinations are significant, in view of what follows. They showed an overassessment for the year 1916 of over $2,000, an additional tax for 1917 of $68,443, an additional tax for 1918 of $237,071.46, and an overassessment for 1919 of $61,003.39.

It is a fair inference that at this conference an agreement was reached, at least tentatively, that plaintiff's tax liability for the four years was to be adjusted on the basis of the figures then submitted. This, I think, is shown by a letter from plaintiff to the Commissioner, dated January 30, 1925. As this letter is apparently relied upon by defendant as a statutory waiver within section 278 (c) of the Revenue Act of 1924 (26 USCA § 1060 note), it is given in full:

"New England Southern Mills
"24 Federal Street
"Boston 9
"January 30, 1925.
"Commissioner of Internal Revenue,
"Washington, D. C.
"IT:CR:D:RR
"Attention Mr. Paul F. Cain,
"Sir:

"At a conference held in Washington on January 21, 1925 between representatives of the International Cotton Mills and its affiliated corporations, (Bay State Cotton Corporation, Boston Yarn Company and J. Spencer Turner Company), consisting of Mr. Charles L. Talbot, an officer of International Cotton Mills, Mr. Arthur H. Weed and Mr. Merrill G. Hastings, attorneys, and representatives of the Department, consisting of Mr. Paul F. Cain, Mr. J. J. Masterson, conferee, and Mr. R. Ray, auditor, the representatives of the Department presented the following determination of the total tax liability of International Cotton Mills and its affiliated corporations for the calendar years 1916, 1917, 1918 and 1919:

#### 1916
International Cotton Mills.. $ 5,104.81
Bay State Cotton Corporation .................. 10,928.31
Boston Yarn Company..... 2,698.59

#### 1917
International Cotton Mills.. 370,856.75
Bay State Cotton Corporation .................... 373,372.88
Boston Yarn Company..... 100,934.16

#### 1918
Consolidated group, including International Cotton Mills, Bay State Cotton Corporation, Boston Yarn Company and J. Spencer Turner Company........ 2,785,376.34

#### 1919
Consolidated group, including International Cotton Mills, Bay State Cotton Corporation, Boston Yarn Company and J. Spencer Turner Company........ 732,275.14

"The above determination was made under a recommendation of the Committee on Appeals and Reviews, copy of which was transmitted to the taxpayer under date of June 23, 1924. Our position with respect to this recommendation remains the same as had been fully set forth in our letters dated December 3, and December 10, 1924.

"This letter is written to formally state that the International Cotton Mills and its affiliated corporations are willing to accept without further appeal a determination of total tax liability of all the corporations for all the above mentioned years on the basis set forth above.

"At the conference on January 21, discussion was had relative to the allocation of 1918 taxes between the respective companies of the consolidated group and to the method of assessment of additional taxes for that year.

"Under date of July 17, 1924 the International Cotton Mills was notified by the Department that inasmuch as the period prescribed by statute for the assessment of taxes for the year 1918 had expired and no waiver had been filed by it with respect to the assessment of these taxes, no assessment could be made of any additional taxes for that year and that therefore it was requested to file such a waiver in order that the Department could proceed to a determination of 1918 tax liability. The fact that the period prescribed by statute for the assessment of 1918 taxes had expired was confirmed at an informal conference held in Washington on October 9, 1924 between the above mentioned representatives of the taxpayer and representatives of the Department consisting of Mr. Paul F. Cain, Mr. H. H. Robinson and Mr. R. Ray.

"At that conference as well as at later conferences the representatives of the International Cotton Mills and affiliated corporations have stated that although they were reluctant to take advantage of any technicality with regard to the payment of any additional tax for the year 1918, nevertheless they could not give any waiver with respect to the assessment of additional taxes for that year until a final computation of 1918 tax liability had been made by the Department and the results submitted to them for consideration.

"As stated previously the representatives of the Department submitted at the conference held on January 21, 1925, a determination of the total 1918 tax liability for the consolidated group in the amount of $2,785,376.34, which, together with the determination of tax liability for the years 1916, 1917 and 1919 set forth above, all the corporations affected thereby are willing to accept without further appeal $397,-137.34 of the $2,785,376.34 was arbitrarily allocated to the J. Spencer Turner Company and the balance, namely, $2,388,167.54 allocated to International Cotton Mills. These corporations cannot accept such an allocation of the tax inasmuch as the original tax was assessed, paid and collected on the basis of the allocation of the whole amount to the International Cotton Mills, the parent corporation.

"The facts with regard to the allocation of the original tax, its assessment and payment were, except for the matter mentioned below, fully set forth in our letter dated December 3, 1924.

"On or about January 27, 1920 the International Cotton Mills received from the Collector at Boston, Mass. a notice and demand for the further payment of $99,437.23. This demand was not paid but a claim for abatement was duly filed setting forth all the facts with regard to the payment of the tax and requesting that any assessment of the amount mentioned in the notice and demand be abated or that the $100,000 paid to the New York Col-

lector on March 15, 1919 by the J. Spencer Turner Company on its individual tentative return be applied against the assessment represented by the demand.

"It was agreed at the conference on January 21, 1925 that the assessment in the New York District against the J. Spencer Turner Company in the amount of $397,-137.34 was erroneous and should be abated in full, that the amount paid by the J. Spencer Turner Company to the New York Collector should be transferred from that district to the Boston District and be applied against the assessment made in the Boston District against the International Cotton Mills and that any additional tax for the year 1918 should be assessed in full against the International Cotton Mills.

"This letter is written to formally state that, notwithstanding the expiration of the period prescribed by the statute for the assessment of 1918 taxes, the International Cotton Mills hereby agrees to pay, upon the carrying out of the agreement reached at the conference, the difference between the $2,785,376.34 1918 tax liability of the consolidated group as determined by the Unit, and the amount previously assessed against it, namely, $2,548,304.58, (which amount has previously been paid by it or by the J. Spencer Turner Company), or a net amount of $237,071.46 less any over-payment of taxes for the years 1916, 1917 and 1919, which the determination of tax liability set forth above for those years may show to have been made and which had not been otherwise applied. This agreement is made with the understanding that neither the International Cotton Mills nor any of the corporations affiliated with it for the year 1918 will be under any liability to pay any amount by way of interest or penalty in connection with the above mentioned assessment made in the New York District against the J. Spencer Turner Company and the above mentioned notice and demand made by the Collector in the Boston District against the International Cotton Mills.

"It is understood that this consent to the determination of total tax liability and any payment of the net amount of any additional taxes for all the years 1916, 1917, 1918 and 1919 found to be due as a result thereof, shall not prejudice the rights these corporations or any of them now have or may hereafter have to request a revision of tax liability of any or all of them for any or all the above mentioned

years on the ground that tax liability under the 1918 Act should be computed under the provisions of Sections 327 and 328 of that Act or any other grounds whatsoever, and to be refunded any taxes which it may be determined any or all of them may have overpaid for any or all of the above mentioned years.

"This letter is signed by the New England Southern Mills, the name of International Cotton Mills having been so changed in 1923.

"It is respectfully requested that this letter be acknowledged as promptly as possible, together with a confirmation of the settlement of tax liability herein set forth.
"Very truly yours,
"New England Southern Mills
/s/ F. Hartwell Greene
"[Corporate Seal]            Treasurer.
"Attest: Chas. L. Talbot /s/
        Clerk
                "Approved: D. H. Blair /s/
                        Commissioner."

The Commissioner, instead of accepting the taxpayer's offer of settlement, proceeded to again revise the assessments, and on April 9, 1925, sent to the plaintiff two communications. One related to the taxes for the years 1916 and 1917, concerning which, I assume, formal waiver was on file. The figures submitted for these years departed only slightly from those given in plaintiff's letter of January 30. The other communication related to the 1918 and 1919 taxes. These were materially increased. The 1918 additional tax was increased to $4,611.98, and the 1919 overassessment was converted into a deficiency of $20,068.99, or an increase in 1919 taxes of $81,069.38.

On July 11, 1925, the Commissioner assessed additional taxes of $241,683.74 for the year 1918 and of $20,068.99 for the year 1919. These additional taxes were paid. The 1918 tax was paid as follows:

Aug. 16, 1926.    $121,683.74
plus interest $7,301.02. Total   $128,984.76
Sept. 23, 1926.   $4.20  1924
overassessment  applied....        4.20
Feb. 17, 1927.   $119,995.80 plus
interest $10,799.89.   Total   130,795.69

Total amount paid · $259,784.65

Plaintiff duly filed claim for refund of these 1918 taxes, one of the grounds being that they had been assessed too late without its consent. The Commissioner, in passing upon the claim for refund, again

revised the assessment of 1918 in July, 1931, reducing the total tax liability from $2,789,988.62 to $2,775,553.86, and issued a certificate of overassessment of $14,134.76 with interest of $3,792.18, and also refunded $1,272.16 collected as interest on the overpaid portion. The claim for refund was disallowed as to the balance. Plaintiff now seeks to recover $244,377.73, the additional 1918 tax assessed July 11, 1925, less the refunds of $15,406.92 ($14,134.76 plus $1,272.16), or, in the alternative, the excess of the tax finally paid over what plaintiff offered to pay in its letter of January 30, 1925, which excess plaintiff computes to be $71,515.45. Defendant concedes that in any event plaintiff is entitled to recover $587.45 as a result of some readjustments not necessary to here detail. The questions of law arising from these facts are somewhat narrow. They are: (1) Whether the letter of January 30 constituted a waiver within the purview of the Revenue Act of 1924, § 278 (c); and (2) whether the taxpayer is bound by an agreement to pay the taxes alleged to be due according to the figures submitted at the conference of January 21, 1925.

I do not find in defendant's brief any serious claim that the letter created any contractual obligation to pay the additional 1918 tax. I do not see how any such contention could prevail. The letter may well be treated as an offer, but there is no evidence that it was ever accepted. In fact, the conduct of the Department is wholly consistent with a rejection of the offer. Under the circumstances, I fail to discern any legal basis or justification for now holding the plaintiff to the terms of its offer. There was never any mutuality of agreement between the Commissioner and the plaintiff. The principal ground for resisting this suit is that section 278 (c) of the Revenue Act of 1924 (26 USCA § 1060 note) applies, and that the Commissioner and the taxpayer consented in writing to the assessment of the tax after the time prescribed by section 277 (a) of the act (26 USCA § 1057 note).

The cases cited by the defendant do not lend much assistance. It is not particularly helpful to learn that a written waiver may be executed after the statutory period has run, Burnet v. Chicago Ry. Equipment Co., 282 U. S. 295, 51 S. Ct. 137, 75 L. Ed. 349; Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335; McDonnell v. United States, 288 U. S. 420, 53 S. Ct. 410, 77 L. Ed. 869; Brown & Sons Co. v. Burnet, 282 U. S. 283, 51 S. Ct. 140, 75 L. Ed. 343; or that such a waiver extends the time for collection as well as assessments, Stange v. United States, supra; Aiken v. Burnet, 282 U. S. 277, 51 S. Ct. 148, 75 L. Ed. 339; Brown & Sons Co. v. Burnet, supra; or that the statute of limitations could be waived apart from the provisions of a Revenue Act, Aiken v. Burnet, supra; Brown & Sons Co. v. Burnet, supra; or that a waiver is not a contract binding the Commissioner not to assess after the specified period if subsequent legislation extended the time within which assessments could lawfully be made, Florsheim Bros. Co. v. United States, 280 U. S. 453–466, 50 S. Ct. 215, 74 L. Ed. 542.

It is my opinion that the Internal Revenue Department and defendant's counsel in his brief have fallen into error in persistently referring to plaintiff's letter as a waiver. I do not so read it. On the contrary, it contained an express refusal to extend the statutory limitations. Plaintiff did propose to overlook past delinquencies provided the taxes for all years 1916–1919, inclusive, could be settled on the figures submitted at the conference of January 21, and recited in the letter of January 30. But its offer was rejected, and in reaching for more taxes for 1918 it lost all for that year.

The language of the statute (section 278 (c) clearly contemplates an extension of time beyond the limited period during which the Commissioner may thereafter compute, assess, and collect the tax. This period may be extended only with the assent of the taxpayer, and any writing invoked will be construed to carry out the intention of the parties. Aiken v. Burnet, supra; United States v. Southern Lumber Co. (C. C. A.) 51 F.(2d) 956; United States v. Heinrich (D. C.) 3 F. Supp. 1015.

If the letter be regarded as waiving the right to interpose the statute of limitations, the terms of the waiver limited the purpose and imposed conditions which the Commissioner was not at liberty to disregard. The condition was that the government accept the specified amount in full satisfaction of plaintiff's total tax liability. If the government would stand by the determination of January 21, 1925, the taxpayer would, under these circumstances, pay the 1918 additional assessment as then computed, notwithstanding the assessment was late. So far as it may have been nec-

essary to comply with taxpayer's proposal, no doubt it could be said that the plaintiff assented to a late assessment, but it by no means follows that it consented that the Commissioner could make any assessments he chose.

It must be remembered that both parties knew on January 30, 1925, that no valid increase could be made in the 1918 taxes without the taxpayer's assent. If the assent was given conditionally, the conditions had to be fulfilled or there was no assent. This was not done. On the contrary, the Commissioner ignored the terms of the letter and exacted an additional tax after the expiration of the period of limitation. The exaction was unlawful, and section 607 of the Revenue Act of 1928 (26 USCA § 2607) gives the plaintiff a right to recover what it has paid on account of the 1918 additional tax, less refunds, namely, $244,377.73 with interest according to law.

Judgment accordingly may be entered for the plaintiff.