## OLIVER TYPEWRITER CO. v. UNITED STATES.

### No. L–294.

Court of Claims.

May 4, 1936.

Leo H. Hoffman, of New York City (Kix Miller, Baar & Hoffman, of Chicago, Ill., and Robert W. Knox, of New York City, on the brief), for plaintiff.

John W. Blalock, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

In the original petition filed herein plaintiff sought to recover the amount of $2,256.32, which was the amount of the second additional assessment for 1916 made on May 27, 1924, and collected by a credit allowed June 2, 1925. The grounds alleged in the original petition for the recovery of this amount were that it had been collected after the period of limitation for assessment and collection and that the Commissioner had erred in his determination as to the amortization deduction for 1916. This amount had been specified as an alleged overpayment in a timely claim for refund filed with the Commissioner November 6, 1925, which alleged, first, that the statute of limitation had run against the collection of that amount prior to the time of assessment or credit, and, second, that the Commissioner had erred in allocating to 1915 a portion of the amortization of properties acquired and used in 1915 for the manufacture of munitions, and that the entire amortizable

cost (original cost less salvage) should have been allocated to and allowed as deductions in 1916 and 1917. Refund of the overpayment for 1916 resulting from such alleged erroneous allocation was claimed.

The additional assessments for 1916 of $21,816.87, made November 1, 1917, and $3,886.02, made February 13, 1925, were not specifically mentioned in this claim for refund, but a portion of the first additional assessment of $21,816.87, the exact amount not being disclosed by the record, resulted from the disallowance of a portion of the amortization of munitions property claimed in the return for 1916. However, the amortization deduction finally allowed by the Commissioner for 1916 exceeded the deduction claimed in the return by $14,714.43. In the final analysis only $1,341.46 of the total additional tax assessed and paid for 1916 resulted directly from the alleged erroneous allocation of the amortizable costs of properties acquired in the years 1915 to 1917, inclusive. The remainder of the total of the three additional assessments mentioned resulted from other adjustments made by the Commissioner, none of which was specifically mentioned in the claim for refund upon the rejection of which this suit is based.

Two amended petitions were filed in this court. In the second amended petition an overpayment of $19,960.75 was alleged for 1916, for which judgment was sought with interest. This petition set forth two additional items in support of the claimed overpayment, which items had not been specified in either the original petition or in the claim for refund, as follows: (1) The amount of $3,886.02 assessed in February, 1925, and collected by credit June 2, 1925, alleged to have been barred by the statute of limitation when assessed and collected; and (2) such amount as may be legally refundable as the result of the alleged error of the Commissioner in refusing to allow as a deduction in determining net profits subject to tax for 1916 the amount of the munition manufacturer's tax accrued for 1916.

The claim for refund, the disallowance of which must form the basis for suit to recover any internal revenue tax, did not include in either of the grounds stated the claim that the additional assessment of $3,886.02 was barred by the statute of limitation. The first ground of the refund claim specified only the additional assessment of $2,256.32 as being barred. However, in view of our conclusion hereinafter stated that the additional assessment of $2,256.32 was not barred when collected, it is unnecessary to discuss the question whether suit can be maintained to recover the additional assessment of $3,886.02 which was collected at the same time. We are of opinion that no recovery can be had in respect of item (2) mentioned above relating to the deduction for 1916 of the total munition manufacturer's tax found to be due by the Commissioner. The 1916 tax is now claimed as a deduction for 1916 on the ground that it was a proper accrued expense for that year under section 302 (d). No mention of this item was made in the claim for refund. It is clear, therefore, that plaintiff cannot maintain suit in respect of the claimed deduction of the munitions tax as an accrued expense for 1916. United States v. Felt & Tarrant Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025; Electric Power & Light Corporation v. United States, 1 F.Supp. 773, 76 Ct.Cl. 379, 390, 391. Plaintiff insists that it is entitled to maintain this suit to recover any overpayment which would result from the allowance of a deduction of the tax for 1916 from income for that year, for the reason that, when the Commissioner disallowed the deduction and proposed to assess, and did assess, an additional tax by reason of such disallowance, it filed a written protest against such proposed disallowance prior to the making of the additional assessment, which protest the Commissioner had before him in his files when he considered and rejected the claim for refund October 25, 1928. But the fact that a written protest had been made against the disallowance of the deduction in connection with the proposed additional assessment does not satisfy the statutory requirement that, in order to maintain suit, the grounds made the basis of such suit must have been set forth in a timely claim for refund after payment of the tax. United States v. Felt & Tarrant Co., supra; Electric Power & Light Corporation v. United States, supra.

This leaves for consideration the two items set forth in the claim for refund: (1) Was the additional assessment of $2,256.32 made by the Commissioner May 27, 1924, and collected by credit June 2, 1925, barred by the statute of limitation? (2) Was the allowance made by the Commissioner as a deduction for 1916 for amortization of values of buildings and machinery under section 302 (f) of the Revenue Act of 1916 reasonable?

In view of the provisions of sections 304, 305, and 306 of title 3 of the Revenue Act of September 8, 1916 (39 Stat. 781, 782), we think the additional munitions tax of $2,256.32 was not barred at the time it was assessed and collected. Unlike the provisions of sections 8 (b), 9 (a), 13 (b), and 14 (a) of title 1 of the Revenue Act of 1916 (39 Stat. 761, 763, 770, 772), relating to income tax, the above sections of title 3 relating to munitions taxes did not specify the date when the Commissioner should notify the taxpayer of the amount of tax for which it was liable or specify the period within which he could discover and assess any tax determined to be due for the years for which returns were required to be filed. Section 9 (a) of the Revenue Act of 1916 provided that the income tax imposed by title 1 should become due and payable on June 15 following the making of the return on March 1 after the close of the taxable period on December 31 of the preceding year, and that the Commissioner had three years within which he might make additional assessments. Section 14 (a) contained similar provisions as to corporations. Stange v. United States, 282 U.S. 270, 274, 51 S.Ct. 145, 75 L.Ed. 335; Aiken v. Burnet, 282 U.S. 277, 280, 51 S.Ct. 148, 75 L.Ed. 339; Brown & Sons Co. v. Burnet, 282 U.S. 283, 286, 51 S.Ct. 140, 75 L.Ed. 343. Section 304 of the munitions tax title provided that persons engaged in the manufacture of munitions should make a return on March 1 to the collector for the district in which the taxpayer had its principal office, setting forth the gross amount of income derived or accrued from the sale or disposition of munitions; and section 305 provided that all such returns should be transmitted forthwith by the collector to the Commissioner, who should, as soon as practicable, assess the tax found to be due and notify the person making such return of the amount of tax for which such person was liable, and that such person should pay the tax to the collector on or before thirty days from the date of such notice. This section related only to the tax determined by the Commissioner on the face of the return. With respect to assessments of additional tax, section 306 provided that, should the Commissioner have reason to be dissatisfied with the return as made, he was authorized to make an investigation and to determine the amount of net profits and might assess the proper tax accordingly. This section further provided that the Commissioner should notify the person making such return, and that he should proceed to collect the tax in the same manner as provided in title 3, unless the person so notified should file a written request for hearing with the Commissioner within thirty days after the date of such notice.[1]

Section 1322 of the Revenue Act of 1921 (42 Stat. 315), which was in force at

[1] Sec. 304. On or before the first day of March, nineteen hundred and seventeen, and the first day of March in each year thereafter, a true and accurate return under oath shall be made by each person manufacturing articles specified in section three hundred and one to the collector of internal revenue for the district in which such person has his principal office or place of business, in such form as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall prescribe, setting forth specifically the gross amount of income received or accrued from the sale or disposition of the articles specified in section three hundred and one, and from the total thereof deducting the aggregate items of allowance authorized in section three hundred and two, and such other particulars as to the gross receipts and items of allowance as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may require.

Sec. 305. All such returns shall be transmitted forthwith by the collector to the Commissioner of Internal Revenue, who shall, as soon as practicable, assess the tax found due and notify the person making such return of the amount of tax for which such person is liable, and such person shall pay the tax to the collector on or before thirty days from the date of such notice.

Sec. 306. If the Secretary of the Treasury or the Commissioner of Internal Revenue shall have reason to be dissatisfied with the return as made, or if no return is made, the commissioner is authorized to make an investigation and to determine the amount of net profits and may assess the proper tax accordingly. He shall notify the person making, or who should have made, such return and shall proceed to collect the tax in the same manner as provided in this title, unless the person so notified shall file a written request for a hearing with the commissioner within thirty days after the date of such notice; and on such hearing the burden of establishing to the satisfaction of the commissioner that the gross amount received or accrued or the amount of net profits, as determined by the commissioner, is incorrect, shall devolve upon such person.

the time the additional munitions tax involved in this case was assessed and collected, provided that all internal revenue taxes, except as provided in section 250 of that act relating to income taxes, should "be assessed within four years after such taxes became due." This provision of section 1322 was continued without change in the limitation provisions in the Revenue Acts of 1924, 1926, and 1928.

A study of sections 304, 305, and 306 of the munitions tax, title 3 of the act of 1916, in the light of the limitation provisions as to assessments of income tax contained in section 2 (E) of the Revenue Act of October 3, 1913 (38 Stat. 166, 169), and sections 9 (a) and 14 (a) of title 1 of the Revenue Act of 1916, discloses a purpose on the part of Congress to permit the Commissioner, without limitation of time, to assess and collect whatever munitions taxes were determined to be due after notice and opportunity to the taxpayer to be heard. Had it been intended that the munitions tax be determined, assessed, and collected within a definite period of time after the close of the taxable period on December 31, of each year, or within a definite time after the filing of the return, which was required to be made on March 1 after the close of the preceding taxable year, limitation provisions similar to those inserted in the Revenue Act of 1913 and title 1 of the act of 1916 relating to income taxes would, we think, have been included in section 305 or 306 of the munitions tax, title 3 of the 1916 act. Section 305 of the munitions tax title, instead of specifying the date on which the Commissioner should notify the taxpayer of the amount of tax found to be due upon the face of the return, provided merely that, when such return had been transmitted to him by the collector, the Commissioner should assess the tax disclosed to be due by the return and notify the person making such return of the amount of such tax as soon as practicable, and that the taxpayer should pay such tax within thirty days from the date of such notice. The only possible limitation that could be read into this section would be one based upon an unreasonable delay by the Commissioner in assessing the tax disclosed on the return as made.

Section 306 relates to the determination, assessment, and collection of tax in excess of that disclosed in the return, after an investigation and audit of the return and the books and records of the taxpayer. The language of this section clearly discloses the purpose to authorize the Commissioner to determine, assess, and collect such tax as he may determine to be due in excess of the tax disclosed upon the return; the pertinent language of the section being that "the commissioner is authorized to make an investigation and to determine the amount of net profits and may assess the proper tax accordingly." There is clearly no limitation in this language as to the time within which he shall determine and assess any tax found to be due. The remainder of section 306 relates to notice to the taxpayer and the withholding of collection of the tax determined if the taxpayer files a written request for a hearing within thirty days after the date of such notice. Under the above-mentioned sections, 305 and 306, it seems clear that the munitions tax, whether disclosed on the return made under section 304 or by a final determination and assessment by the Commissioner, became due within the meaning of the subsequent general limitation statute enacted as section 1322 of the Revenue Act of 1921, when the Commissioner made a final determination with respect to the amount demanded and notified the taxpayer thereof. All of the taxes for 1916 were assessed and collected well within four years after determination and notice. In the case at bar the Commissioner made only one investigation of plaintiff's books and records and the three additional assessments, in November, 1917, May, 1924, and February, 1925, were made during the time the case was under consideration in connection with plaintiff's protests, appeal, and request for a hearing. There is nothing in the statute that justifies the conclusion that the Commissioner may not make more than one determination and assessment or more than one investigation or audit of the return. Cf. Oak Worsted Mills v. United States, 36 F.(2d) 529, 68 Ct.Cl. 539.

Plaintiff relies upon the case of United States v. Anderson et al., 269 U.S. 422, 434, 443, 46 S.Ct. 131, 70 L.Ed. 347, in support of its contention that the munitions tax became due in 1917 and that the amounts assessed in 1924 and 1925 were barred, but that decision, which involved a different question, is not applicable here. There the court had for consideration the question whether the munitions tax for 1916 was a proper accrued item so as to constitute a legal deduction from gross income for 1916 for income tax purposes; that was the only question before the court, and was the only matter specifically decided. In the state-

ment of the facts concerning the issue before it, the court set forth that the tax imposed on profits of munitions, manufactured by the appellee and sold during 1916, became due and was paid in 1917, but, at the same time, the court pointed out that the munitions tax return for 1916 was made in 1917 and that the tax as shown thereon after revision and an additional assessment was paid in 1917, the year it was due. The interpretation which we place upon title 3 of the Revenue Act of 1916 (section 300 et seq.) is consistent with these statements of the court in the Anderson Case. In that case the Commissioner during 1917 assessed the tax shown on the return. Thereafter, during the same year, he determined and assessed an additional tax. As a result, the munitions tax so determined and assessed was paid in 1917. Obviously, therefore, such tax became due in 1917.

Early in the administration of the munitions tax title of the Revenue Act of 1916, the Commissioner held, II–2 C.B. 236, that under sections 305 and 306 the munitions tax became due upon determination, assessment, and notice, and this construction of the statute has been consistently followed. We think it is correct.

■■ The last question relates to plaintiff's contention that the amount of $16,198.57 of the cost, less salvage, of properties acquired in 1915 and used in that and subsequent years in the manufacture of munitions, which amount the Commissioner allocated to the year 1915, should properly have been allocated to and allowed as deductions in determining munitions taxes for 1916 and 1917, for the reason that the allocation of any portion of the amortizable cost to 1915 gave a retroactive effect to the Munitions Tax Act when none was intended. We think this contention of plaintiff cannot be sustained in principle. In any event, it cannot be sustained upon the evidence of record in this case. Section 302 (f) of the Revenue Act of 1916 provided that, in com-

puting net profits for the purpose of the munitions tax, there should be allowed as deductions from gross amount received or accrued for the taxable year from the sale of munitions manufactured, among other things, "a reasonable allowance according to the conditions peculiar to each concern, for amortization of the values of buildings and machinery, account being taken of the exceptional depreciation of special plants." This section did not authorize an amortization deduction of the full costs of the buildings and machinery, but permitted a deduction only of a reasonable allowance in the taxable years on the basis of value. In arriving at a reasonable allowance to be made, the Commissioner was required by the statute to take into consideration the conditions peculiar to each concern and the exceptional depreciation of special plants. In the case at bar, plaintiff had acquired the greater portion of the facilities prior to 1916 upon which an allowance for amortization was claimed. Munition facilities costing $239,798.85 were acquired and used in 1915, and the balance of such facilities, costing $154,281.72, was acquired during 1916 and 1917. It is clear that the property used in the manufacture of munitions in 1915 suffered depreciation during that year, and the evidence of record does not establish that the amount of $16,198.57 charged to 1915 by the Commissioner against the amortizable costs of $322,593.06 was not a reasonable allowance for depreciation of facilities acquired and used during that year. Nor does the evidence establish that the allowance by the Commissioner in 1916 of $119,453.62 for amortization in that year in respect of munitions facilities acquired in 1915 was unreasonably low. Plaintiff had the burden of showing that the amortization allowance, totaling $201,167.32, made by the Commission for 1916, was not reasonable. This it has failed to do.

Plaintiff is not entitled to recover, and the petition is dismissed. It is so ordered.