**UNITED STATES of America,
Plaintiff,**

**v.**

**Charles E. HEYL, Jr., Joseph J. Keresey, State Bank of Albany, Town of Canaan, a municipal corporation, Town of Chatham, a municipal corporation, and the County of Columbia, Defendants.**

United States District Court
S. D. New York.

April 22, 1964.

Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, New York City, for plaintiff, Philip H. Schaeffer, Asst. U. S. Atty., of counsel.

Alan Hegeman, Chatham, N. Y., for defendants Charles E. Heyl, Jr., and Ann Heyl.

Whalen, McNamee, Creble & Nichols, Albany, N. Y., for defendant State Bank of Albany.

Harold V. A. Drumm, Chatham, N. Y., for defendant Joseph J. Keresey.

John J. Curran, Chatham, N. Y., for defendants Town of Chatham and Town of Canaan.

PALMIERI, District Judge.

The Government's motion for summary judgment pursuant to Rule 56, Fed.R. Civ.P., is granted. Defendants' cross motion for summary judgment is denied.

The Government seeks to foreclose certain federal tax liens outstanding against the defendant taxpayer, Charles E. Heyl, Jr., and against certain real property situated in Columbia County, New York. These liens have been in existence since February 21, 1952, when a tax liability of $13,679.33 was assessed against Heyl for non-payment of his 1943 income tax. Of this amount, $551.02 has been paid by Heyl, leaving $13,128.31 still due. This action was commenced on June 29, 1962. The basis for the cross motion is that the action was brought after the expiration of the statute of limitations, which defendants claim occurred on December 31, 1960.

The facts are not disputed; the only issue is as to the conclusion of law to be drawn from those facts. Heyl was notified of his tax liability on February 21, 1952. On October 17, 1952, he submitted to the Government an offer of compromise which, by its terms,[1] extended the

1. The relevant portions of the offers are set forth in the Appendix.

applicable statute of limitations [2] for the period of consideration of that offer, and for one year thereafter. The first offer was rejected by the Government on January 25, 1955. A second offer of compromise, containing the same provisions extending the statute of limitations, was tendered on July 11, 1957 and rejected on September 25, 1957.

Meanwhile on June 21, 1957, Heyl had filed with the Internal Revenue Service a Form 900 Tax Collection Waiver, which extended the statute of limitations to December 31, 1959.[3] On March 11, 1959, Heyl filed another Form 900 waiver identical with the first, and extending the statute of limitations to December 31, 1960. The existence and language of the two offers of compromise and the two Form 900 waivers are not in dispute.

The crucial issue is whether the Form 900 waivers, and particularly the second of these, supplanted the two offers of compromise, as the taxpayer claims, or whether they left the offers of compromise unaffected and enforceable according to their terms, as the Government contends.

The taxpayer's contention is that the statute of limitations expired on December 31, 1960, on the basis of the second Form 900 waiver, and that the instant action was not timely commenced. The Government's position is that the statute would have expired on August 5, 9 or 13, 1962, depending upon different methods of computation, but, in any case, well after the commencement of the action on June 29, 1962. It is clear that the Government must prevail.

The case relied upon by the Government, and which is controlling here, is United States v. Fischer, 93 F.2d 488 (2d Cir. 1937). There the taxpayer had tendered, in January of 1932, an offer of compromise which extended the statute of limitations "by the period of time (not to exceed two years) elapsed between the date of the filing of this offer and the date on which final action thereon is

taken." The offer of compromise was rejected in January of 1934. In the meantime, in February of 1932, the taxpayer had executed two waivers which extended the time for collection either by distraint "or by a proceeding in court begun at any time prior to December 31, 1933." The action was begun in March 1934, and the taxpayer claimed that it was untimely; that the statute of limitations had run on December 31, 1933, the date set forth in his two waivers. The District Court accepted the taxpayer's position that the two waivers executed in February 1932 had superseded the prior, but still outstanding, offer of compromise of January 1932.

The Court of Appeals reversed, and held that the extension of the statute contained in the offer of compromise was unaffected by the subsequent waivers. The Court stated that the District Court had entertained an erroneous conception of the effect of the offer:

"It was not a contract. Aiken v. Burnet, 282 U.S. 277, 51 S.Ct. 148, 75 L.Ed. 339. It was but a voluntary unilateral waiver of a defense. * * Nor were the subsequent waivers to December 31, 1933, contracts. The extension already in effect was, consequently, not reduced by additional unilateral waivers, since the government relinquished no rights by accepting them." (93 F.2d at 489).

And see Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 187, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957); Concrete Engineering Co. v. Commissioner, 58 F. 2d 566, 568 (8th Cir. 1932). The reasoning enunciated by the Court in the Fischer case retains its validity here. Nor is it a ground for distinction that, in the instant case, the second waiver was executed after the Government had rejected the taxpayer's second offer of compromise, while in the Fischer case the offer was still outstanding. The unilateral nature of both the offers and the waivers holds true regardless of the time of

---

2. Internal Revenue Code of 1954, § 6502 (a), 26 U.S.C. § 6502(a).

3. The relevant portions of the waivers are set forth in the Appendix.

their execution. Moreover, the offers of compromise expressly extended the statute of limitations not only for the period of their consideration by the Government, but also for a period of one year after their rejection. The fact that the second waiver was executed after the rejection of the offer in compromise is not significant. There was no relinquishment by the Government of the additional extension period since that waiver was merely a unilateral act of the taxpayer. United States v. Gayne, 137 F.2d 522, 523 (2d Cir. 1943).

This result is consonant with a long standing and well understood policy that statutes of limitation barring assessment and collection of federal taxes generally receive a strict construction in favor of the Government. Davis, Playing Safe with Statutes of Limitations, 16 N.Y.U. Inst. on Fed. Taxation 453 (1958).

For the above reasons, the defendants' motion for summary judgment must be denied. The motion of the Government is granted.

A proposed judgment should be submitted on notice providing for the sale of the property in question subject to the senior lien of the State Bank of Albany.

### Appendix

The relevant portion of the offers in compromise, which was identical for both offers filed by Heyl, reads as follows:

"In making this offer, and as a part consideration thereof, the proponent hereby expressly agrees that all payments and other credits heretofore made to the account[s] for the period[s] under consideration shall be retained by the United States and, in addition, the proponent hereby expressly waives:

\* \* \* \* \* \*

"2. The benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to the suspension of the running of the statutory period of assessment and/or collection for the period during which this offer is pending and for one year thereafter."

The relevant portion of the Form 900 waivers, which differed only as to the dates to which the statute was extended, reads:

"It is hereby agreed by and between the above-named taxpayer \* \* \* and the District Director of Internal Revenue \* \* \* that the unpaid balance of the assessment identified below may be collected \* \* \* by levy or by a proceeding commenced in court begun on or before the date which is shown at the right hereof."

The dates set down in the two Form 900 waivers were December 31, 1959, and December 31, 1960.

