## UNITED STATES v. GAYNE.
### No. 304.

Circuit Court of Appeals, Second Circuit.

July 12, 1943.

Walter L. Post, of New York City (Edward Holloway and Robert M. Post, both of New York City, of counsel), for appellant.

Mathias F. Correa, U. S. Atty. (William L. Lynch, Ass't. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The defendant appeals from a judgment against him in an action to recover a deficiency in income tax assessed against him on November 22, 1930. The action was not begun until February 10, 1939, more than eight years afterwards, and, as the period within which to sue is limited to six years (§ 276(c) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Code, § 276(c), it was barred unless the agreed facts tolled the statute of limitations. That is the only question.

On September 16, 1931, the defendant, whose property had substantially disappeared in the slump of 1929, made an offer to compromise his liability of over $90,000 by the payment of $250. This offer was in writing upon the usual Treasury form, to which was annexed a "waiver" declaring that "in the event of the rejection of the offer" the defendant extended "the statute of limitations * * * by the period of time (not to

exceed two years) elapsed between the date of the filing of this offer and the date on which final action thereon is taken." This "waiver" the Commissioner accepted and took the offer of compromise "under consideration." Nothing of importance as to the course of the ensuing negotiations appears before February 3, 1932, except that in a letter of November 18, 1931, the field agent in charge wrote to his superior that he recommended the rejection of the offer, and that the defendant had consented to raise it to $1,000. If this was a "rejection" it was only that of the agent, and it was never confirmed. On February 3, 1932, the defendant sent a letter to the Commissioner, declaring that he had "submitted * * * a tentative offer of $5000.00 * * * of which $1000.00 has been paid in cash"; and consenting that in case he should default in "installment payments" the Treasury might keep whatever he had paid, applying it on his deficiency. On May 2, 1932, the general counsel of the Commissioner answered this by a letter, saying that the "offer has been approved for acceptance," suggesting that the defendant communicate with the collector about payment, and concluding that the "offer will be finally accepted" when the defendant had paid "$1000.00 in cash and completed the balance * * * in twenty-four equal monthly installments." Next followed a formal offer by the defendant on June 2 of $4,750 in compromise—$5,000 less the first payment of $250. The defendant at the same time paid $750, and agreed to pay the balance in twenty-four equal monthly installments. On December 5, 1933, the Commissioner wrote to the collector, saying that the offer of compromise had been accepted on May 2, 1932, but that the defendant had defaulted in all but the payment of the first $1,000 and instructing the collector "to collect the balance" of the "outstanding tax liability."

■ Section 276(c) provided that the statute shall be tolled for whatever period the parties may agree to before the action is barred, including any second period agreed to before the first period has expired. Therefore, the first waiver extended the time from September 16, 1931, until the offer was rejected, but not later than September 16, 1933. That offer was never rejected. As we have said, the field agent's recommendation was never acted upon; and his was not the "final action" provided for in the "waiver." When the defendant

became satisfied that his first offer would be rejected and raised the amount, it was either an amendment of the old offer, or a new offer. The defendant wishes to treat it as an amendment and arguendo we shall do so, for it makes no difference in the result. Although his letter of February 3, 1932, was written for another purpose, we shall also assume that it put that amendment into formal shape, and we shall finally assume—although that, as we shall show, is quite untrue—that the general counsel's letter of May 2, 1932, was an acceptance of the amended offer. None of these, nor all of them together, constituted a "rejection" of the first offer, and the "waiver" which had accompanied it was still in force on June 2, 1932, when the second "waiver" was executed; and that "waiver" in turn lasted until December 5, 1933. Thus, assuming with the defendant that the offer was then rejected, the whole period from September 16, 1931, to December 5, 1933, was tolled. If so, what remained of the total elapsed period between November 22, 1930, when the assessment was made, and February 10, 1939, when the action was brought, was less than six years.

■■ The defendant in answer to this conclusion argues that the second waiver was without consideration, because if there was really only one offer—that of September 16, 1931—amended at some time before May 2, 1932, and then accepted by the general counsel's letter of that date, the Treasury could give no consideration for the second "waiver." There are two answers to this. In the first place, a "waiver" is not a contract (Florsheim Bros. Dry Goods Co. v. United States, 280 U.S. 453, 466, 50 S.Ct. 215, 74 L.Ed. 542); it "is essentially a voluntary, unilateral waiver of a defense by the taxpayer." Stange v. United States, 282 U.S. 270, 276, 51 S.Ct. 145, 147, 75 L.Ed. 335. As such, it needs no more consideration than does the acknowledgment of a debt in order to revive it after the statute has barred it. Second, the general counsel's letter merely "approved for acceptance" the "tentative" offer, and expressly suspended final acceptance until the installments should be paid. This it did advisedly, for the counsel did not wish to let the time run against collection in case the defendant defaulted. Moreover, the Commissioner never accepted the offer at all; his letter of December 5, 1933, calling the counsel's letter

**524**

an acceptance, could not change the legal position of the parties. He was not writing to the defendant and it did not matter how he characterized the counsel's letter to a subordinate. The defendant's second objection to the second "waiver" is that it was unnecessary; but plainly that is irrelevant. The question whether the Treasury needed so much additional time was a matter for the defendant to consider before he executed the "waiver."

Judgment affirmed.