DENIS BRODY AND CAROL BRODY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brody v. Commissioner
Docket No. 15934-86.
United States Tax Court
T.C. Memo 1988-203; 1988 Tax Ct. Memo LEXIS 226; 55 T.C.M. (CCH) 808; T.C.M. (RIA) 88203; May 5, 1988. Scott A. Brody, for the petitioners. Theodore R. Leighton, for the respondent. WHALEN
MEMORANDUM OPINION WHALEN, Judge: This case is before the Court on petitioners' motion for summary judgment pursuant to Rule 121, Tax Court Rules of Practice and Procedure.[1] The Commissioner determined a deficiency in petitioners' Federal income tax for their 1978 taxable year in the amount *228 of $ 10,209.09, and determined that such deficiency was a substantial underpayment attributable to tax motivated transactions, with the result that the annual rate of interest is 120 percent of the underpayment rate, pursuant to section 6621(c). [2] The sole issue for decision is whether the adjustments determined by respondent in his notice of deficiency are within the limited scope of a special consent on IRS Form 872-A to extend the period for assessment and collection with respect to petitioners' 1978 return, or whether such adjustments are outside the scope of the consent and, hence, are barred by the applicable statute of limitations under section 6501(a). FINDINGS OF FACT Petitioners, Denis Brody and Carol Brody, are husband and wife and resided at Woodbury, New York, at the time they filed their petition in this case. Denis Brody ("petitioner") is an attorney and a certified public accountant. He held a partnership interest in BDB Properties ("BDB"), a New York partnership formed on or about May 17, 1978, and *229 he was the managing partner of BDB during 1978. Petitioner's interest in the profits and losses of BDB during 1978 was approximately nine percent. During 1978, BDB held a partnership interest in Thunderbird Associates, Ltd. ("Thunderbird"), a Texas limited partnership. BDB's interest in the profits and losses of Thunderbird was approximately 34 percent. During 1978, neither petitioner held an interest in Thunderbird other than by reason of petitioner's partnership interest in BDB. For its 1978 taxable year, Thunderbird reported a net loss for Federal income tax purposes of $ 953,129.00. [3] BDB reported $ 324,964.00, or approximately 34 percent of the total, as its share of the loss. [4] BDB also reported guaranteed payments to petitioner in the amount of $ 18,896.00. On Schedule E of his 1978 Federal income tax return, petitioner reported $ 31,255.00 as *230 his nine percent share of the Thunderbird loss reported by BDB. [5] Petitioner also reported on Schedule E guaranteed payments from BDB in the amount of $ 18,896.00. Petitioners filed their 1978 return on or before Monday, April 16, 1979. The general period of limitations on assessment and collection under section 6501(a) with respect to petitioners' 1978 return expired on April 15, 1982. On January 16, 1982, prior to the expiration of such period of limitations, petitioners executed a Special Consent to Extend the Time to Assess Tax on IRS Form 872-A (hereinafter referred to as "consent"). The consent was executed on behalf of the District Director of Internal Revenue on January 20, 1982. Under the terms of the consent, the amount of any Federal income tax due with respect to petitioners' return for calendar year 1978 could be assessed by respondent on or before the 90th day after the occurrence of one of three events: (a) the date on which the Internal *231 Revenue Service received from petitioners a Form 872-T, Notice of Termination of Special Consent to Extent the Time to Assess Tax; (b) the date on which the Internal Revenue Service mailed such Form 872-T to petitioners; or (c) the date on which the Internal Revenue Service mailed a notice of deficiency for the year 1978. The consent form further provides that, if a notice of deficiency were sent with respect to petitioner's 1978 income tax return, then the time for assessing the tax for such year would not expire until 60 days after the period during which the making of the assessment was prohibited. The following limitation was added to the preprinted consent form: The amount of any deficiency assessment is to be limited to that resulting from: (1) any carryover or continuing tax effects caused by adjustments to any prior tax returns: (2) any adjustments to your share of any items of income, gain, loss, deduction, credit and/or other distributions from an entity(ies) known as: Thunderbird & Associates Ltd. (3) any adjustments which effect [sic] your basis in the aforementioned entity(ies); (4) any adjustments to the return(s) of the aforementioned entity(ies) which *232 also affect your return; (5) any adjustment(s) to your return caused by the determination, if any of the Commissioner based on acts, whether of commission or omission, taken by you with reference to an interest(s) in the entity(ies); and/or acts, whether of commission or omission, taken by an individual or organization dealing with the entity(ies); and/or the act of curing any defect with respect to an interest(s) in the entity(ies); and (6) any consequential changes to other items based on such adjustments. The use of the term "entity" is without prejudice to the right of the Commissioner to challenge whether such entity exists or, if existing, the character of such entity. On February 24, 1986, while the consent was in effect, the Commissioner sent to petitioners the notice of deficiency which is at issue in this proceeding. In such notice of deficiency, the Commissioner determined that petitioner's loss from BDB should be reduced to $ 2,564.00 from $ 31,255.00, the amount reported, an increase of $ 28,691.00 in petitioners' taxable income. The notice of deficiency gives the following explanation of the adjustment: It has been determined that your distributive share of *233 the loss from the B.D.B. Properties partnership which has an interest in the Thunderbird Associates Ltd. partnership is $ (2,564.00) in lieu of $ (31,255.00) which was reported on your tax return for the taxable year ending 1978. The Thunderbird Associates, Ltd. partnership has been agreed to (sic) at the partnership level. Accordingly, your taxable income is increased by the amount of $ 28,691.00 computed as follows: 1978
Ordinary Net Loss per Thunderbird Assoc.
Ltd's Partnership Return
(953,129.00)
Add: Unallowable Items
1) Standby Fee - Permanent Mortgage
103,500.00 2) Standby Fee - Construction Loan
103,500.00 3) Fixed Management Fee
33,333.00 4) Operating Deficit Fee
200,000.00 5) Covenant Not to Compete
20,000.00 6) Standby Fee - Gap Loan
175,000.00 7) Consulting Fee
33,333.00 8) Standby Fee - General Partner
80,000.00 9) Escrow Fee
40,000.00 10) Tax Consulting Fee
30,000.00 11) Loan Fee
56,063.00 12) Amortization
(1,409.00)
13) Interest Income
1,599.00 Corrected Thunderbird Assoc.
Ltd's Partnership Loss
(78,210.00)
BDB Properties' Distributive
Share of Thunderbird's Loss
(26,665.00)
Your Distributive Share of BDB
Properties' Partnership Loss
( 2,564.00
BDB Properties' Partnership Loss
Reported on Your Return
(31,255.00)
Increase in Income
28,691.00 *234 The parties agree that the general period of limitations on assessment and collection under section 6501(a) expired with respect to petitioners' 1978 return prior to February 24, 1986, and that no assessment could properly have been made with respect to such return on February 24, 1986, except as comtemplated by the consent. Petitioners filed their petition with this Court on May 22, 1986. Thereafter, on July 6, 1987, petitioners filed the instant Motion for Summary Judgment. At an early stage in these proceedings, the parties abandoned informal discovery and they have filled the Court record with a variety of papers seeking and opposing formal discovery. One such exchange should be noted. On August 13, 1987, respondent served on petitioners a written request for admissions pursuant to Rule 90. Petitioners did not respond to such request until November 6, 1987, more than 30 days after service of the request. Thereafter, respondent's motion to strike petitioners' untimely response was granted following hearing before the Court, with the result that each matter contained in respondent's request for admissions is deemed to have been admitted by petitioners pursuant to Rule *235 90(c). Undaunted by the Court's decision, petitioners filed a "Motion to Withdraw or Modify Admissions" which, together with respondent's objection thereto, is now pending before the Court. OPINION Petitioners argue that the adjustments determined by the Commissioner in his notice of deficiency for their 1978 return are barred by the period of limitations on assessments and collections under section 6501(a). Their position is premised on the fact that the consent expressly refers only to adjustments from Thunderbird, and on the fact that they did not directly own a partnership interest in Thunderbird but owned such an interest only indirectly through another partnership, BDB, which is not mentioned in the consent. They argue that the adjustments determined by respondent are, therefore, outside the scope of the consent and that the notice of deficiency is untimely. Petitioners assert that the subject consent is "clear and unambiguous" and does not admit of the adjustments determined in the notice of deficiency because it fails to explicitly provide for adjustments from BDB. Respondent also asserts that the terms of the consent are clear and unambiguous but with the opposite *236 legal result. Respondent's position is that the tax deficiency determined in the subject notice of deficiency, which was based entirely on a reduction of petitioner's share of the net loss reported by Thunderbird, is clearly and unambiguously contemplated by the consent. Alternatively, respondent asserts that factual issues, involving the intent of the parties and estoppel, must be decided and preclude the granting of petitioners' motion for summary judgment. Furthermore, respondent asserts that petitioners' motion must be denied in view of the facts set out in its request for admissions which are deemed admitted after petitioners failed to timely reply. We agree with the assertion made by both parties that the consent is clear and unambiguous and we agree with petitioners that there is, accordingly, no justification to look behind the terms of the consent into the intent of the parties at the time the special consent was executed. Petitioners are mistaken, however, about the legal effect of the consent. We agree with respondent that the adjustments determined in the notice of deficiency are well within the terms of the consent and that the assessment of a deficiency with *237 respect to petitioners' 1978 income tax return based upon such adjustments is not barred by the period of limitations on assessment and collection under section 6501(a). In view of this decision, we do not reach respondent's alternative positions that petitioners are estopped to deny the timeliness of the notice of deficiency and that there are other factual issues which require petitioners' motion for summary judgment to be denied. [6]
In general, section 6501(a) provides that the amount of any income tax must be assessed within three years after the return was filed. Among a number of exceptions to that general rule, section 6501(c)(4) provides that a taxpayer and the Secretary of the Treasury or his delegate may agree in writing to the extension of the period of limitations on assessment. [7]
*238 We have previously noted that a consent to extend the period of limitations on assessment and collection is not a contract but is a unilateral waiver of the taxpayer's defense on such ground. Roszkos v. Commissioner,87 T.C. 1255, 1261 (1986); Piarulle v. Commissioner,80 T.C. 1035, 1041 (1983). Thus, for example, no consideration is necessary to give validity to such a consent. Stange v. United States,282 U.S. 270 (1931); see United States v. Gayne,137 F.2d 522 (2d Cir. 1943). Nevertheless, section 6501(c)(4) requires that the parties reach a written "agreement" regarding the extension and it gives the parties freedom to decide the terms governing the extension. Pursell v. Commissioner,38 T.C. 263, 278 (1962), affd. 315 F.2d 629 (3d Cir. 1963). Accordingly, contract principles are significant in reviewing a written agreement under section 6501(c)(4) to extend the period for assessment. Roszkos v. Commissioner, supra at 1261; Piarulle v. Commissioner, supra at 1042. *239 In this case, as described above, the parties entered into a special consent to extend the time to assess tax on Internal Revenue Service Form 872-A. This is a so-called "open-ended consent" in the sense that it is designed to expire, not on a fixed date, but after the occurrence of one of several enumerated events. See generally Winn v. Commissioner,67 T.C. 499, 507-509 (1976), affd. in part and remanded on another issue 595 F.2d 1060 (5th Cir. 1979). Not just any adjustment could be made to petitioners' 1978 return during the agreed upon extension. The consent is expressly limited to "adjustments to your [petitioners'] share of any items of income, gain, loss, deduction, credit and/or other distributions from an entity(ies) known as: Thunderbird Associates, Ltd." The parties agree and we have found that assessment of the deficiency determined in the notice of deficiency is barred by section 6501(a), unless, and to the extent that, the adjustments therein are contemplated by such consent. We find nothing uncertain or ambiguous about the restrictive language used in the consent; it permits adjustments only to petitioner's share of partnership *240 items from Thunderbird. Consequently, there is no justification to look behind the consent into the facts surrounding its execution. Atlas Oil & Refining Corp. v. Commissioner,22 T.C. 552, 560 (1954); Constitution Publishing Co. v. Commissioner,22 B.T.A. 426, 428 (1931); cf. Evinrude v. Commissioner,T.C. Memo. 1980-454. Our job in this case is limited to determining the legal effect of the agreement entered into by the parties as expressed in the consent form. A partnership is not a taxable entity but it is a conduit through which items of income, gain, loss, deduction, credit and other partnership items are passed to its partners in accordance with the interest of each in the partnership. Section 701. The partnerships in this case are so-called tiered partnerships and BDB, the parent partnership, was required to take into account in computing taxable income its share of partnership items from its subsidiary, Thunderbird. Section 702. Petitioner, as a partner in BDB, was required to take into account in computing taxable income *241 his share of partnership items from BDB, including BDB's share of such items from Thunderbird. Section 702. The year at issue, 1978, is governed by the law as it existed before the partnership audit rules were added to the Code by the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L.No. 97-248, section 402(a), 96 Stat. 646 ("TEFRA"). Under the law as it existed at that time, the period of limitations with respect to partnership items was based upon the return of an individual partner and not on the return of the partnership. Jackson v. Commissioner,86 T.C. 492, 537 (1986), on appeal (10th Cir., Feb. 3, 1987). There was no mechanism similar to section 6229, added to the Code by TEFRA in 1982, under which the period for assessing tax attributable to partnership items could be extended by agreement at the partnership level, rather than by agreement with each individual partner. See generally Staff of Joint Committee on Internal Revenue Taxation, 97th Cong., 2d Sess., General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of *242 1982 at 267 (1982). Prior to TEFRA, therefore, the Commissioner was required to obtain consent to extend the period of limitations from each of the partners and, in the case of a tiered partnerships, as in this case, the Commissioner was required to obtain such consent from each ultimate taxpayer. General explanation, supra at 267. In analyzing the legal effect of the subject consent, it is useful to note that an agreement under section 6501(c)(4) extending the period of limitation on assessment and collection has the effect of also extending the period of limitations on filing a claim for credit or refund of an overpayment. Section 6511(c). The consent executed by the parties in this case makes this clear by providing, "The taxpayer(s) may file a cliam [sic] for credit or refund and the Service may credit or refund the tax within 6 (six) months after this agreement ends." Otherwise, the general rule is that no credit or refund shall be allowed or made unless a claim for such credit or refund is filed within three years from the time the return was filed or two years from the time *243 the tax was paid, whichever period expires last. Section 6511(a). During argument on their motion for summary judgment, petitioners conceded that the sole basis for their position is the fact that the consent did not specifically mention BDB. They argue that the omission of any reference to BDB in the consent had the effect of allowing the limitations period to close as to partnership items from BDB and that the consent does not serve to keep the limitations period open as to petitioners' share off Thunderbird's losses because petitioners did not directly own an interest in Thunderbird. We disagree. The consent reveals the Commissioner's initial concern about the net loss reported by Thunderbird on its 1978 return, a concern which later became a formal determination that such loss was overstated. Prior to expiration of the period of limitations, therefore, the Commissioner approached petitioners and obtained their agreement to extend the period of limitations to assess a deficiency in petitioners' tax for 1978. The Commissioner had no other mechanism available to him at that time, before the enactment of section 6229, by which to extend the limitations period for adjustments *244 to partnership items from either Thunderbird, the partnership which reported the losses, or BDB, the intervening partnership. The Commissioner exhibited no similar concern about the partnership items reported by BDB, other than its share of the net loss reported by Thunderbird. Therefore, the Commissioner expressly limited the consent to adjustments in petitioners' share of partnership items from Thunderbird. As thus limited, the consent not only extended the limitations period on assessments under section 6501(a) for partnership items from Thunderbird but it also extended the limitations period for filing claims for credit or refund under section 6511(a) for such items. Accordingly, during the additional time provided under the consent, the Commissioner could assess tax based upon adjustments to petitioners' share of partnership items from Thunderbird and petitioners could make claims for refund of tax attributable to partnership items from Thunderbird. Partnership items of BDB which did not originate with Thunderbird, on the other hand, are not covered under the consent and the Commissioner could not assess tax based on adjustments to such items nor could petitioners make claim *245 for refund of such tax during the extended limitations periods. Petitioners' argument disregards the fact that they are the ultimate taxpayers with respect to a share of all of the partnership items reported by Thunderbird for 1978, to the extent such items are tiered up through BDB, and that they actually deducted a share of the losses reported by Thunderbird on their 1978 return. The Commissioner formulated the consent to keep the limitations period open with respect to such losses and other partnership items from Thunderbird and obtained petitioners' agreement to such extension. Petitioners do not claim any trickery or deceit on the part of the Commissioner. They do not claim that they misunderstood what was intended by the restrictive language in the consent or that they intended something different. In this regard, we note that the consent does not state, as it easily could have, that adjustments to petitioners' share of partnership items from BDB are not covered. Petitioners' only claim is that the omission of any reference to BDB in the consent forecloses any adjustment to their share of the losses of Thunderbird after the general period of limitations expired because *246 they did not directly own an interest in Thunderbird. Petitioners' argument simply begs the question of what was intended by the parties as objectively determined from the language used in the consent. The fact that petitioners did not directly own an interest in Thunderbird means nothing different in the context of interpreting the consent than it meant in the context of petitioners' income tax return. Petitioners deducted losses from Thunderbird on their return, in accordance with their partnership interest in BDB, and the consent is clearly intended to cover partnership items from Thunderbird. It is also clear that is precisely what was intended by the Commissioner. Furthermore, had the consent specifically named BDB, as petitioners claim is necessary, it would have been a different agreement with broader legal effect than the subject consent. In that case, any partnership item flowing from BDB into petitioners' return, not just partnership items from Thunderbird, would have been covered by the extended limitations periods. The parties, of course, could have formulated their agreement in that manner but there is no reason to require them to have done so. Moreover, under *247 petitioners' construction, the consent form would have been a nullity ab initio. We have no reason to believe that the parties would have undertaken a meaningless act and we will not interpret the consent to so provide when there exists a reasonable interpretation which accomplishes the intent of the parties as objectively interpreted. "It must be assumed that an effective and not a futile act was intended." Stange v. United States,282 U.S. at 277. To borrow from our opinion in Grunwall v. Commissioner,86 T.C. 85, 89 (1986), "A deal is after all a deal, and fairness dictates that both parties adhere to the provisions of the document they both voluntarily signed." Petitioners' motion for summary judgment will be denied. To reflect the foregoing, An appropriate order will be issued.
Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. All section references are to the Internal Revenue Code of 1986, as amended. ↩
3. It appears that both Thunderbird and BDB reported income for Federal income tax purposes on a calendar year basis. ↩
4. There is no explanation in the record to account for the fact that such amount is $ 900.14 more than the product of $ 953,129.00, the net loss reported by Thunderbird, multiplied by 34 percent. ↩
5. There is no explanation in the record to account for the fact that such amount is $ 2,008,24 more than the product of nine percent of the $ 324,964.00, the Thunderbird loss reported by BDB, multiplied by nine percent. ↩
6. In rendering this opinion, we have not relied upon any of the facts enumerated in respondent's Request for Admissions which are deemed admitted due to petitioners' failure to respond within the 30 days required by Rule 90. ↩
7. An agreement under section 6501(c)(4) extending the period for assessment will generally also extend the period of limitation on filing a claim for credit or refund of an overpayment. Section 6511(c)↩.